## T. L. SMITH v. THE STATE.

### No. 8304.   Delivered Jan. 21, 1925.

#### Violation of Tick Eradication Law—Constitutionality of Law—Held Invalid.

This prosecution is brought under Secs. 10 and 11, Chap. 60, acts of the regular session of the 35th Leg., known as the Tick Eradication Law. Appellant has attacked the constitutionality of said two sections of said act. We believe that the legislature had the power to make a law forbidding the moving of cattle from one tick infested pasture, through tick infested territory to another tick infested pasture, though we doubt if they intended to so say. We merely *hold* that the two sections, to-wit: Secs. 10 and 11, under one of which this prosecution is brought, are open to the objections made by the appellant, and for the reasons stated will be *held* unconstitutional.

Appeal from the County Court of Brazoria County.   Tried below before the Hon. J. T. Loggins, Judge.

Appeal from a conviction of a violation of the tick eradication statute; penalty, a fine of $25.00

The opinion states the case.

*A. E.* and *Carlos B. Masterson,* of Angelton, for appellant.

*Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

LATTIMORE, JUDGE.—Appellant was convicted in the county court of Brazoria County of a violation of the tick eradication statute, and his punishment fixed at a fine of $25.00.

The information charged that in October, 1922, appellant owned certain cattle located in Brazoria County, and that said county was in Zone No. 3 as created by Sec. 8 of Chap. 60, Acts Regular Session of the 35th Legislature, known as the Tick Eradication Law. The counties in said zone had been quarantined by proclamation of the Governor in February, 1922, and it was alleged in the information that without proper order or permit as required, appellant had shipped, driven or drifted, or permitted this to be done, twenty head of cattle from said quarantined territory "into a district and part of the county which was then and there under quarantine." The whole County of Brazoria was under quarantine resulting from said proclamation, and as we understand the charge laid, it was that appellant drove or shipped, etc., twenty head of cattle from said quarantined territory into a district or part of the county which was also under quarantine, without permit, etc. Sec. 10 of said Chap. 60, supra, provides that when the Governor's proclamation placed any counties under quarantine, "every premise in said quarantine counties, parts of counties, or district, shall at once be-

come quarantined, and no cattle," etc., shall be moved from any premises where located when the quarantine became effective, except in accordance with the rules and regulations of the Live Stock Sanitary Commission, or upon a written permit of an authorized inspector of said commission.

The word "premises" has many varied meanings and is governed largely by the setting and sense of the context when used, but there is no fixed legal significance attached to it that would make it mean in all cases a house or a lot, a farm or a pasture, or a given quantity of land. It may mean different bodies of land separated from each other. Sandy v. State, 6 Ala. 18. It may mean all of a large estate. Thompson v. Brown, 73 N. W. 194. We seriously doubt the sufficiency of a law so indefinite as to merely lay down as a proposition that one must not move cattle, etc., from one premise to another. This might mean that the owner of cattle could not move them from his cow lot across the fence to his pasture, or from one of his pastures across the road or fence to another,—but the chief trouble with it is that no one affected by it could tell just what it did mean. One having cattle anywhere in a quarantined county and having his property separated by fences, roads or distance, would be unable to determine what he might legally do. Suppose he owned five pastures and had the intervening land leased but each of the nine tracts were separated by fences. Is a cow lot a prmise, or is a field a premise, or must it be a pasture, or does it include only adjacent lands, or what? We do not know,—the law does not say, and no person having cattle, etc., could tell. If this prosecution is brought under Sec. 10, in Smith v. State, 232 S. W. Rep., 522, we held it necessary that the premises be described in the information so that the accused might have definite notice.

We have discussed Section 10 because it seems so intimately connected with Section 11 of said Chapter, and we suppose this prosecution to be brought under one of these two sections. Section 11 of said Chapter 60, supra, is attacked by appellant as being an enactment not within the purview of the caption of the bill creating said Chapter 60. On inspection we find the caption of the bill, among other subjects which the bill might embrace, sets forth, "For the filing of quarantine notices and making it a misdemeanor to fail or refuse to dip or treat domestic animals when ordered to do so by the Live Stock Sanitary Commission or inspector thereof, or *to move domestic animals out of quarantine* territory without a written permit, or to fail or refuse to permit the inspection of domestic animals, and prescribing penalties therefor." There is nothing else in said caption looking to the enactment of any criminal feature of the proposed law. Sec. 11 of said Chapter is as follows:

"Any person, firm or corporation who is the owner or caretaker of any catttle, horses, mules or asses located in any quarantined territory who shall ship, drive, drift or permit the same to be shipped, driven or drifted into any county, part of any county, or district, which has been quarantined under the provisions of Sections 9 or 10 of this Act, without the written permit of an inspector of the Live Stock Sanitary Commission of Texas, or the United States Bureau of Animal Industry, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined in any sum not less than one ($1.00) dollar, nor more than five ($5.00) dollars per head for all live stock so shipped, driven or drifted, or permitted to be shipped, driven or drifted."

This manifestly does not undertake to penalize one for moving cattle out of quarantined territory as seems to have been contemplated by the statement in the caption, but apparently makes it criminal to drive cattle already in a quarantined territory to any other part of such territory. We do not believe the caption of the bill creating said Chapter 60 includes that part of the enactment known as Section 11.

Another objection raised to said Section 11 is that it is not definite. Let us see. Agreeing that Brazoria County as a whole became quarantined territory by the proclamation of the Governor, and considering said section as though applicable only to Brazoria County for purposes of our argument, it would then in effect state that any person the owner of cattle, etc., in "Brazoria county" who shall ship, drive, etc., such cattle into "Brazoria county, or any part or district of said county * * * shall be deemed guilty of a misdemeanor," etc. It is not stated that if he drive, etc., them into another county, etc., he would be guilty. Clearly this would be such an indefinite and unintelligible statement as would make it impossible to know what one could or could not do legally under the provisions of such statute. This section of the law is meaningless. If the framers of the act intended to forbid the removal of cattle from the farm, lot or district where same were located when the law took effect, as appears to be the purpose of Section 10 of said chapter, let them so state in words that have such definite meaning as that the ordinary citizen might understand. The use generally of the word "premise" means nothing. If the legislators intended and desired to make it penal to ship or drive cattle from one part of a quarantined county or territory to another part of the same county or territory, it would seem easy to so state. Section 35 of Article 3 of our Constitution requires, with certain exceptions, that bills contain only one subject and that the caption of the bill be so framed as to include that which is written into the law.

Appellant testified in this case that he owned several tracts of land and pastures in Brazoria county; that in moving these cattle he fol-

lowed routes that were used by cattle in going to and from dipping vats and had no thought of going around the authorities; that the whole county being under quarantine, and no special district being laid off in it, it did not occur to him that he needed a permit. Ignorance of the law is no excuse for its violation, and we are not now saying that the Legislature has no power to make a law forbidding the moving of cattle from one tick infested pasture through tick infested territory to another tick infested pasture, though we doubt if they intended to so say. We are merely holding that the two sections named under one of which this prosecution is necessarily brought, are open to the objections made by the appellant, and for the reasons stated will be held unconstitutional.

The judgment is reversed and the prosecution ordered dismissed.

*Dismissed.*