## Ex Parte Dillie Lane.

No. 13079.   Delivered October 16, 1929.
Rehearing denied December 18, 1929.

The opinion states the case.

*Barret Gibson, Hobart Key,* and *H. T. Lyttleton,* all of Marshall, for appellant.

*John E. Taylor,* County Attorney and *Benjamin Woodall,* Assistant County Attorney, of Marshall, and *A. A. Dawson* of Canton, State's Attorney, for the State.

CHRISTIAN, JUDGE.—The appeal is from an order of the district judge on a hearing under a writ of habeas corpus remanding relator to the custody of the sheriff.

The application for the writ shows that appellant is held under a capias issued on an indictment charging him with a violation of the provisions of Chapter 189 of the Acts of the Forty-first Legislature at its Regular Session. The return of the sheriff shows that he is holding relator under a conviction in the county court. A copy of the judgment of conviction is not found in the record. In the state of the record the appeal must be dismissed. Ex parte Albertson, 215 S. W. 453.

The appeal is dismissed.

*Dismissed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

LATTIMORE, JUDGE.—Appellant moves to re-instate this appeal, accompanying the motion by a supplemental transcript showing that he is held under a judgment rendered in the county court of Harrison county, adjudging him guilty of a misdemeanor and punishing him by a fine of two hundred dollars. The relief here sought by appellant involves the constitutionality of the act under which he was punished. The supplemental transcript shows that he is regularly held under a capias pro fine. His attack upon the constitutionality of the law under his writ of habeas corpus gave to the district court jurisdiction. Having been remanded by said court, his right of appeal to this court is apparent. The appeal is re-instated and here considered on its merits.

Sec. 1 of Chap. 189, Acts Regular Session, 41st Legislature, 1929, is as follows:

"That it shall be unlawful for any person or persons to go on the premises or plantation of any citizen of this State, in the night time, or between sunset and sunrise, and move or assist in moving any laborer or tenant or the effects or property of any laborer or tenant therefrom, without the consent of the owner or proprietor of said premises or plantation."

Having been convicted in the county court of Harrison county for a violation of the offense of moving a laborer as defined in the article above quoted, appellant sued out his writ of habeas corpus in the district court of said county seeking discharge from custody on the ground that said act was unconstitutional, as being violative of the Fourteenth Amendment to the Federal Constitution, the Bill of Rights of our State Constitution, and contrary to our general statute. Sec. 3 of our Bill of Rights guarantees to all freemen equal rights, and the Fourteenth Amendment to the Federal Constitution forbids that any state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, or which deny to any person within its jurisdiction equal protection of the law. Art. 6 of our Penal Code, often referred to in numerous decisions, provides that whenever it appears that a provision of a penal code is so indefinitely framed or of such doubtful construction that it can not be understood, * * * such penal law shall be regarded as wholly inoperative.

We call attention to certain matters involved in the act under which this prosecution was had, which appear on the face of the enactment. Reading of same makes plain the proposition that it does not even undertake to provide that the "laborer or tenant" who is moved in the night time, must be a laborer or tenant upon the premises or property, or for the person who owns the premises or property from which he is removed. As far as this law is concerned he who went on the premises or plantation of another man in the night time to move one, might be there to move some party entirely unknown to the owner of the premises and yet be guilty. Attention is further called to the fact that in order to penalize a person aimed at in this law, he must *go* on such premises or plantation. If the accused happened to live on a five thousand acre plantation, under the provisions of this statute, he might remove from said premises any laborer or tenant or his effects without incurring any penalty, but if some friend or person who lived just across the invisible property line should be asked to assist, or should volunteer his assistance in moving such laborer or tenant, he would become a violator of the law. Attention is also called to the fact that if the plantation or premises belong to some person other than a citizen of this State, the laborer or tenant thereon might be moved with impunity as well as immunity, while if the plantation or premises be the property of a citizen of this State, such would not be the case. In other words, if two thousand acre plantations lay side by side, one

belonging to a Texas citizen and the other to a citizen of Oklahoma or Louisiana, persons might at will go in the night time to move the tenants or laborers off the plantation of the non-resident, while such persons on the plantation or premises of the citizen, could not be moved without incurring the penalties of the law. Attention is also called to the fact that there might be a group of tenants living within fifty feet of a group of people who owned their homes and under this law the latter might be moved by anybody at any time, while under the same the others, though citizens of Texas and of the United States, entitled to all the privileges and immunities inherent in and pertaining to that condition, could not be moved except in the daytime, or else by obtaining the consent of some person not in any sense entitled to assert ownership or control over the person or property of such laborer or tenant. Attention is also called to the fact that under said law the effects or property of any tenant or laborer on the premises or plantation of such citizen, could not be moved at any time without the consent of the owner or proprietor of said premises or plantation, even though it could not be claimed or asserted from any standpoint that said owner or proprietor had any lien upon or claim against said property and effects.

This court in a tick eradication case said the word "premises" within the purview of that law was so indefinite as to be incapable of understanding. Smith v. State, 268 S. W. Rep. 742. We see no reason to make a distinction between the holding there and here. It would appear to be within the purview of the makers of said statute that tenants and laborers in the congested cities should not be permitted to move with the assistance of any other person, either their person or effects, and those would be penalized who undertook to aid them in so doing. It is not perceived by this court that any just reason could exist for thus crippling and embarrassing the movements of citizens of this State and the United States if such was intended, and the contrary is not expressed. Just who are meant by the use of the word "laborer"? It certainly ought to include the members of this court, the Governor of this State, all men everywhere who earn their bread according to the scriptural injunction "By the sweat of their brow." Has this country come to the point where honest men who labor to make a living dare not call on any person to move them or their effects except within certain hours prescribed by the legislature? What a tremendous power it would put in the hands of land owners and landlords in this country! How humble the laborers of this country would have to

become if forsooth they desired to leave their homes at night or carry their grips to the train between sunset and sunrise, for if they happened to live in rented homes they could not call a taxicab or outside agency without first obtaining the consent of the thus enthroned ruler over the liberties of the people, to-wit: the owner of such premises.

This law seems to us, with the utmost deference to its makers, to inflict heavy burdens upon him who is too poor to own a means of transportation of himself or his effects. If he happens to own a wheelbarrow or a product of the genius of Henry Ford, he might go where he please and take his effects where he please, at any time he pleased. If however fate had wrested from him such means of transportation and he was too poor to be able to own such, he would be compelled to use Shank's mare in such removal, or remain where he was till day. In other words, when the sun in heaven dropped out of sight this poor fellow's right to call for help to move other than upon his own legs or personally owned means of removal, would also set. Father, Mother, friend or relative might not come to his aid unless he first humbly sought and obtained permission from his overlord. It is barely possible that the makers of this law thought one of its effects would be to cause a laudable rush on the part of our people to become owners in fee of some plot of ground upon which others might seek to live. We do not know.

The State's brief asserts that a law similar to this one has been enacted and upheld in Louisiana, and we are cited to the case of State v. Hunter, 164 La. 406. We have carefully perused the opinion in that case, but with apology to our Brethren of that court we are wholly unable to agree with the reasoning in that case. It is stated therein that this law merely forbids a person having no right on the premises of another, to go thereon in the night time without the proprietor's consent, and that it is an additional restraint upon a trespasser. In another place in said opinion it is stated that this law makes no discrimination, that it forbids all alike. We certainly agree that to be not discriminatory a law should forbid all persons alike, whether they live on or off such plantation, from helping move dependent laborers or tenants. We can not agree that the purpose of this law is to create some new form of trespass. Such contention appears to carry with it a suspicion of camouflage. The real intent of the law appears to be to prevent those who are laboring upon a particular plantation somewhere from being carried away or removed by other persons who may see fit to desire the aid

or assistance of such laborers or tenants and be willing to offer them a greater wage than they were getting from the person upon whose premises such laborers or tenants might be then engaged. That there may be cases in which citizens of this State are aggrieved by the removal from their premises of those whom they have brought a great distance at expense to aid them and assist them in gathering their crops, and with such we sympathize, but if a law is to be enacted to reach this seeming wrong, it must be done in different phraseology and more in accord with the rights of men and women laborers and tenants, and more in accord with the terms of our Constitution and laws. We are constrained to hold this law violative both of the State and Federal Constitutions, and that same is so indefinitely framed as that its comprehensions and prohibitions are impossible of enforcement.

The judgment of the district court of Harrison county will be reversed, the appellant discharged, and the prosecution ordered dismissed.

*Dismissed.*

ON STATE'S MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—On the original hearing we were favored with a comprehensive brief dealing almost entirely with citations and excerpts from the decisions of the Supreme Court of the United States. In writing the opinion there was no discussion of them for the reason that this court entertained the view that the matter was one in which there was no question cognizable by the Supreme Court of the United States. We find ourselves unable to reach any conclusion in accord with the decision of the Supreme Court of Louisiana. On the present hearing there is the suggestion that the validity of the statute has been upheld by both the Supreme Court of Louisiana and the Supreme Court of the United States. However, the report of the Supreme Court of the United States upon the subject is here quoted in full:

"December 12, 1927. Per Curiam: The judgment of the supreme court of the state of Louisiana in this case is affirmed, for the reason that, on the record and on the facts, no substantial Federal question is presented." (Henry Hunter, Plaintiff in Error, v. State of Louisiana, 72 Law. Ed. 398.)

From this notation it is manifest that the legal questions involved have not been considered by the Supreme Court of the United States.

The motion for rehearing is overruled.

*Overruled.*