RAILROAD COMMISSION et al. v. FORT WORTH & D. C. RY. CO. et al.

No. 9131.

Court of Civil Appeals of Texas. Austin.

April 15, 1942.

Rehearing Denied April 29, 1942.

Gerald C. Mann, Atty. Gen., and Glenn R. Lewis, Cecil C. Cammack, Geo. W. Barcus, and Ocie Speer, Asst. Attys. Gen., for appellants.

Allen & Gambill, of Fort Worth, Adiar Dyer, of Dallas, G. E. Hamilton, of Matador, J. D. Dodson, of San Antonio, Walker, Smith & Shannon of Fort Worth, Thompson & Barwise and R. S. Shapard, all of Dallas, Baker, Botts, Andrews & Wharton and Andrews, Kelley, Kurth & Campbell, all of Houston, Terry, Cavin & Mills, of Galveston, A. L. Burford, of Texarkana, C. C. Huff, of Dallas, Fred L. Wallace, of Fort Worth, John T. Maginnis, of Houston, L. L. Bowman, of Greenville, V. W. McLeod, of Galveston, and Claude Pollard, of Austin, for appellees.

BAUGH, Justice.

Appeal is from an order of the District Court setting aside, and enjoining the enforcement of, an order of the Railroad Commission dated April 19, 1940, forbidding the operation, with stated exceptions, of doubleheader trains on any railway in Texas. After extensive hearings, the Commission found that such operations "should be prohibited in the interest of safety to the operatives on. said trains and in the interest of safety for the public in general" and entered the following order:

"Therefore, it is the order of the Railroad Commission of Texas that doubleheader trains shall not be operated within the State of Texas, where there is more than one working locomotive or engine at the same time propelling or moving any one train of cars, except in moving trains up steep grades or where a locomotive propelling a train becomes temporarily disabled after leaving the terminal.

"This same ruling and order applies to Diesel powered engines as well as to other locomotives."

The order was predicated upon the provisions of Arts. 6503, 6504 and 6505, R.C.S. It was attacked by numerous railroads and receivers of railroads in Texas on various grounds directed both against the statutes cited and the order itself. Among others, that both the statutes and the order, penal in character, are void because so indefinite and uncertain that they are unenforceable; that the order was without factual support in the evidence; that the order exceeded the authority granted to the Commission by the statutes; that the order,. if enforced, would amount to a taking of appellees' property without due process of law; that Art. 6505 is unconstitutional as discriminatory, in that it imposes penalties on railroad corporations but not on receivers of railroads; that the order, as entered, constitutes an unauthorized interference with, and imposes an unreasonable burden upon, interstate commerce; and that same is void as to Diesel engines because same were unknown to the Legislature in 1900, when the law was enacted, and could not, therefore, have been comprehended within its provisions.,

The trial court filed findings of fact and conclusions of law in which all these grounds were sustained. Most of the 43 points urged by appellant complain specifically of these several findings and conclusions, and of the action of the trial court in overruling the various special exceptions to appellees' pleadings. Under the conclusions we have reached, however, we deem it unnecessary to discuss in detail the many contentions so made.

██ The original Act, now embodied in Arts. 6503–6505, was enacted in 1900. Not until the order here attacked was promulgated had the Commission ever attempted to regulate the operation of doubleheader trains under these statutes. Art. 6505 makes the law penal in nature, and as such subject to the rule of strict construction. Schloss v. A., T. & S. F. Ry. Co., 85 Tex. 601, 22 S.W. 1014; Houston, E. & W. T. Ry. Co. v. Campbell, 91 Tex. 551, 557, 45 S.W. 2, 40 L.R.A. 225; Missouri, K. & T. Ry. Co. v. State, 100 Tex. 420, 100 S.W. 766; Railroad Commission v. T. & N. O. Ry. Co., Tex.Civ.App., 42 S.W.2d 1091, writ refused; 32 Tex.Jur. § 4, p. 754; 39 Tex.Jur. § 146, p. 276. It is also true that though such statutes and orders will be liberally construed to carry out the intent of the legislature, the Commission can exercise only the powers expressly delegated to it by law, or necessarily implied from those so delegated; and cannot enlarge such delegated powers by its own orders. State v. Robison, 119 Tex. 302, 30 S.W.2d 292, 297; Com. Standard Ins. Co. v. Board of Ins. Com'rs, Tex.Civ.App., 34 S.W.2d 343, writ refused; Danciger Oil & Ref. Co. v. Railroad Commission, Tex.Civ. App., 49 S.W.2d 837, 841; 34 Tex.Jur. § 6, p. 706.

With these rules applicable we turn to an examination of the statutes. The statutes involved provide:

"Art. 6503. (6706) Double-header trains.—Where an unreasonable degree of hazards results to its employes, it is hereby declared to be an abuse of its franchise and privileges for any railroad company, or receiver, operating a line of railroad in this State to run or operate more than one working locomotive at the same time in propelling or moving any one train of cars, except in moving trains up steep grades, or where a locomotive propelling the train becomes temporarily disabled after leaving the terminal; the Railroad Commission shall investigate such abuses and see that the same are corrected, regulated or prohibited as hereinafter provided."

"Art. 6504. (6707) Use regulated by commission.—Should the Commission decide to regulate or forbid the practice of using more than one working locomotive at the same time in the operation of any train on any railroad, or part of railroad, within this State, then it shall make and record an order fully setting forth its decision and clearly designating the railroad, or part of railroad, on which such practice is forbidden or regulated and how regulated. * * *"

"Art. 6505. (6708) Penalty.—Any railroad corporation which shall at any time after ten days after service of such notice violate the order of the Commission, shall be liable to the State for a penalty of not less than five hundred nor more than five thousand dollars for each offense."

Art. 6503 thus defines what would constitute a correctible abuse, excepts from the power delegated to the Commission regulation of trains moving "up steep grades" (which term is not defined) or including disabled engines, and the regulation authorized is "as hereinafter provided." The "hereinafter provided" regulation which is authorized in Art. 6504, after the Commission has ascertained where, when and how the prescribed abuses have occurred, is then stated in clear and unambiguous language: "then it *shall* make and record an order fully setting forth its decision and *clearly designating the railroad, or part of railroad,* on which such practice is forbidden or regulated and how regulated." (Italics ours.)

Manifestly the statute does not forbid the use of doubleheaders, but recognizes their operations over the railroad lines in Texas. Nor can it be construed to authorize the Commission to wholly forbid all such operations, except "up steep grades" or where an engine is disabled. On the contrary, the language of the statute is specific, and requires the regulatory order to be confined to the railroad, or part of railroad, wherein and whereon such operation constitutes an abuse, creating an unreasonable degree of hazards to employees; and contemplates specific corrections to meet specific abuses.

Nor is this an unreasonable limitation on the Commission's delegated authority. It is a matter of common knowledge that there was in 1900, and still is, considerable difference in the type and character of roadbeds of the various railroads, or parts of railroads, in Texas, manifestly taken into account by the Legislature in using the language it did. On a shortline connecting railroad, with sharp curves, varying grades, light rails and ties, and no ballast, operation of a doubleheader might be extremely hazardous; whereas, on a trunk line railroad with heavy rails, minimum curves, reduced grades, and ballasted tracks, and signal devices, the same operation might involve practically no hazard. Based upon such findings the Commission could validly forbid such operation on the one, and permit it on the other, without unjust discrimination. But the statute does not authorize the Commission to forbid such operation as to all, merely because it may be hazardous as to some. Consequently the law, by the specific language used, clearly contemplated only specific regulation where necessary and not a general order, covering the entire field of operation, and applicable to all alike. The order issued was consequently in excess of the powers delegated to the Commission.

It is also invalid, we think, for another reason. Violation of it subjects the offender to a heavy penalty. Operation of such doubleheaders "up steep grades" is excepted, and incurs no penalty. What constitutes a steep grade, necessary to be determined before such penalty can be assessed, is neither defined by the law, nor by any order of the Commission. Nor is it a generic term of such general well defined

meaning, or of such special meaning common to railroad operation, as would afford the operators, a court, or jury, a definite or reasonable standard whereby to determine what operations were exempted from the rule and what were not. The order must therefore, under the rule of strict construction, fall for want of definiteness. It has been held that to recover such a penalty, the State must allege the facts constituting the offense "with the same degree of certainty as is required in a bill of indictment." Pope v. State et al., involving a violation of the Railroad Commission's orders, Tex.Civ.App., 86 S.W.2d 475, 476, and cases therein cited. What might be deemed a "steep grade" in the plains or coastal areas of the State might not be so considered in the broken and irregular terains of the central or western portions. And even if the statute itself be not invalid for want of certainty, on the ground that it would authorize the Commission to define what constitutes, for purposes of regulation, a steep grade, the Commission has not done so, nor does its order do so.

■ The statute, particularly Art. 6505, being penal, and imposing heavy penalties for violation of the order to which it applies, the order must therefore be tested by the same rules applicable to penal statutes generally. It is not merely a rule of civil conduct, but is itself the basis on which such penalties depend. Failure to define with reasonable certainty, therefore, what conduct would invoke the penalty, renders it invalid. Art. 6, P.C. of Texas; Graham v. Hines, Tex.Civ.App., 240 S.W. 1015, 1021; Griffin v. State, 86 Tex.Cr.R. 498, 218 S.W. 494; Smith v. State, 99 Tex.Cr. R. 114, 268 S.W. 742; Galveston, H. & S. A. Ry. Co. v. Duty, Tex.Com.App., 277 S.W. 1057. The order, on this exception, takes into account neither the motive power of the engine, the number of cars composing such train, nor whether they are loaded or empty. What would be deemed a steep grade for a medium sized engine drawing a heavily loaded train, might not be so considered for a mogul engine drawing a train of empty cars. An order, violation of which incurs such a penalty, to be valid must be "sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties." Connally v. General Const. Co., 269 U.S. 385, 46 S.Ct. 126, 127, 70 L.Ed. 322; Missouri K. & T. Ry. Co. v. State, 100 Tex. 420, 100 S.W. 766.

The above conclusions render it unnecessary for us to determine the issue of undue burden on interstate commerce. The record shows, however, that neither Oklahoma nor New Mexico forbids or regulates doubleheader operations; that such order directly affects interstate commerce over transcontinental lines crossing the Panhandle of Texas between these two states; and it is insisted that as to these lines in particular the order is void. In view of the conclusions above stated, however, we pretermit a discussion of this question, as well as the issues presented relating to the sufficiency of the facts presented to the Commission to sustain the order entered; and the character of the review thereof to be had in the trial court. Nor do we find it necessary to pass upon the other contentions made; but confine our holding that the order is invalid to the grounds above stated.

The judgment of the trial court is accordingly affirmed.

Affirmed.