

# THE ATTORNEY GENERAL
# OF TEXAS

## AUSTIN, TEXAS 78711

**JOHN L. HILL**
**ATTORNEY GENERAL**

September 25, 1974

The Honorable Jackie W. St. Clair
Commissioner
Department of Labor and Standards
Sam Houston State Office Building            Opinion No. H- 411
Austin, Texas

Re:   Construction of Article
The Honorable W. D. "Chris" Chrisner              5221f, V. T. C. S., The
Chairman                                          Texas Mobile Homes
Performance Certification Board                   Standards Act
Department of Labor and Standards
Sam Houston State Office Building
Austin, Texas

Gentlemen:

Each of you has requested an opinion involving several questions
pertaining to the construction of Article 5221f, V. T. C. S., the Texas Mobile
Homes Standards Act, hereinafter referred to as "the Act". Due to the
similar nature of your questions, we felt it appropriate to respond to them
in a composite opinion.

The Act creates the Performance Certification Board (hereafter "the
Board") independent of the Department of Labor and Standards (hereafter
"the Department"). Article 5221f, Sec. 3; Art. 5145, Art. 5151a, V. T. C. S.
To each it assigns certain responsibilities and, apparently, there is
uncertainty as to where the jurisdiction of one ends and the other begins.

Commissioner St. Clair's first question asks:

> Once the Mobile Home PCB [the Board] has acted,
> under Section 13(a) of Article 5221f, V. C. S., to hear
> an appeal from an interested party regarding the appli-
> cation to such a party of a Mobile Home Construction
> Standard, and has interpreted the applicable language of
> the ANSI Code (currently adopted as the existing Texas
> Uniform Standards Code for Mobile Homes), does the

p. 1914

PCB have the authority, by statute or otherwise, to
provide enforcement exemptions, exclusions, or vari-
ances (whether prospectively or retrospectively) - or
in any other manner provide for a 'grandfather clause'
- for mobile home units manufactured which do not
meet the construction standards and requirements,
as adopted and interpreted by the PCB?

The Act directs the Board to adopt standards and requirements for
the plumbing, heating and electrical systems [Sec. 4(a)]; and for the body
and frame design and the construction of mobile homes [Sec. 4(b)]. In
both instances the standards are to be "reasonably consistent" with stan-
dards issued by the American National Standards Institute (ANSI) and it
is made unlawful to sell a mobile home that does not comply. The stan-
dards and requirements of Section 4 comprise The Uniform Standards
Code for Mobile Homes (hereafter "the Code").

Section 5 of the Act entrusts enforcement of the Code to the Department
[and see also Sec. 8, Sec. 10, Sec. 12], with the exception of tie-down
standards which are to be established and enforced by the Board under
Sec. 14.

Section 13 of the Act reads:

(a)The board shall hear appeals brought by any
person or party regarding the application to such per-
son or party of any rule, regulation or standard
promulgated pursuant to this Act.

(b)The board shall promulgate such rules and
regulations as necessary to the conduct of hearings
on appeals provided for in this Section.

Clearly, the language authorizes the Board to determine whether a
particular rule, regulation, or standard applies to the appealing party
under the specific facts involved. But, that would seem to be the extent
of its power on appeal. Generally, an administrative agency has only
such powers as are granted it expressly and by necessary implication
by the Legislature. Railroad Commission v. Fort Worth & D. C. Ry. Co.,

161 S. W. 2d 560 (Tex. Civ. App., Austin 1942, err. ref'd., w. o. m.); Kelly v. Industrial Accident Board, 358 S. W. 2d 874 (Tex. Civ. App., Austin 1962, err. ref'd.); 1 TEX. JUR. 2d, Administrative Law and Procedure, Sec. 6; Attorney General Opinion M-609 (1970).

Where the Legislature has determined to allow a regulatory body to provide exemptions from enforcement, it has no trouble saying so, as, for example, Sec. 3.21 of Article 4477-5, V. T. C. S., The Texas Clean Air Act; State zoning laws, Article 1011g, V. T. C. S.

The Act does give the Board authority to grant exemptions with reference to tie-down standards. Section 14. But we are unable to find any express authorization for the Board to provide exemptions, exclusions or variances for manufacturers who do not meet the construction standards and requirements required by Sec. 4(b), and we cannot find any basis to imply such authority. Any attempt by the Board to grant such an enforcement exception, exclusion, or variance would directly conflict with the provisions of Sections 4(a)(2), 5(a) and 6, making the manufacturing and sale of non-complying mobile homes illegal.

Therefore, we answer Commissioner St. Clair's first question in the negative.

His second question asks:

> Does the Mobile Home PCB [the Board] have authority by statute or otherwise, to establish specific enforcement policies and procedures binding on the Texas Department of Labor and Standards on mobile home matters not involving mobile home tie-down standards?

This inquiry correctly assumes that the enforcement and administration of mobile home tie-down standards found in Secs. 14 - 17 of the Act are under the supervision of the Board.

On the other hand, the statute provides that the Department, rather than the Board, has the power to make and enforce rules and regulations in regard to all other provisions of the Act not involving mobile home tie-down standards. Article 5221f, Sec. 5(e). The Act further provides that the Department shall require manufacturers to submit systems for

quality control and transportation, Sec. 5(b); the <u>Department</u> shall issue certification of acceptability, Sec. 5(b)(1); the <u>Department</u> shall have the power to approve modifications on mobile homes which have been issued a Certificate of Acceptability, Sec. 5(c); the <u>Department</u> shall have the power to inspect manufacturing plants, Sec. 8(a); the <u>Department</u> shall hold hearings for alleged violations of the provisions of the Act by manufacturers, Sec. 12; and - -

> All fees shall be paid to the state treasury and placed in a special account <u>for the use of the department in the administration and enforcement of this Act.</u> Sec. 11(d). (Emphasis added).

In Attorney General Opinion H-248 (1974), involving construction of the Texas Mobile Home Standards Act, it was stated that:

> The Performance Certification Board is an independent body appointed by the Governor with its functions and duties enumerated in the Act
>
> . . .
>
> The Act contemplates that the Board will set the standards and requirements for the industry and that <u>the Department will enforce them.</u> (Emphasis added).

We reaffirm that conclusion and believe that coupled with the provisions of the Act set out above, it clearly indicates that the enforcement of all provisions other than tie-down standards has been delegated to the Department rather than to the Board.

Commissioner St. Clair's second question is, therefore, answered in the negative. The Board has no authority to establish enforcement policies or procedures binding on the Department of Labor and Standards concerning any mobile home provisions under the Act other than mobile home tie-down standards.

Commissioner St. Clair's third question asks:

> Does the Mobile Home PCB [the Board] have the authority, by statute or otherwise, to adopt changes or amendments to the previously adopted Texas Uniform Standards Code for Mobile Homes,

which changes or amendments have not been made
by the American National Standards Institute?   (I
call particular attention to the language contained
in Section 4(c), Article 5221f, V. C. S. )

Subsections 4(a) and 4(b) of the Act respectively require the Board to
adopt standards and requirements (a) for plumbing, heating and electrical
systems and (b) for body and frame design and construction.   Each sub-
section contains a subdivision (1) substantially reading:

Said standards and requirements shall be
reasonably consistent with the fundamental
principles adopted, recommended, or issued
as ANSI Standard A119. 1 and as amended
from time to time by the American National
Standards Institute (ANSI) applicable to mobile
homes.

These standards and requirements constitute the Uniform Standards
Code for Mobile Homes [Subsection 4(j)].

Subsection 4(c) reads:

The board may adopt and promulgate any changes
in and additions to the standards referred to in Sub-
sections (a) and (b) of this section made by the
American National Standards Institute.

If the Board has the power to adopt standards of its own under
Subsections 4(a) and (b), then it must necessarily have the power to make
changes in those standards according to Subsection 4(c) regardless of
whether such changes have been recommended by the American National
Standards Institute.

However, in reading these three Subsections together, it is clear
that the standards and requirements and any changes and amendments to
them must always "be reasonably consistent with the fundamental prin-
ciples adopted . . . by the American National Standards Institute (ANSI)
applicable to mobile homes. "   To read the statute otherwise would be to
destroy the intent of the Legislature.

Hence, Commissioner St. Clair's third question receives a qualified affirmative answer.   The Board has authority under Subsection 4(c) of the Act to adopt changes or amendments to the previously adopted Texas Uniform Standards Code for Mobile Homes, which changes or amendments have not been made by the American National Standards Institute, provided that the changes or amendments are consistent with the Board's statutory responsibility to protect the health and safety of the occupants and the public and such changes and amendments are reasonably consistent with the fundamental principles applicable to mobile homes as adopted, recommended and issued by the American National Standards Institute.

Commissioner St. Clair's final question asks:

> As a matter of routine, the [Board] has acted to adopt the 'new' ANSI Standard for Mobile Homes annually; the most recent example being at the June 24, 1974 meeting of the Board, where the most recent 1974 ANSI Code was adopted.   May the Mobile Home PCB, under Section 4 of Article 5221f, V.C.S., adopt standards and requirements not adopted by the American National Standards Institute, if those standards and requirements are 'reasonably consistent with the fundamental principles adopted, recommended, or issued as ANSI Standard A119.1'?

We believe this question is answered by our answer to the Commissioner's third question, supra.

Chairman Chrisner's first question asks:

> Does Article 5221f give the Performance Certification Board the power and authority to interpret and issue interpretive rulings on the Uniform Standards Code for Mobile Homes which has previously been adopted by the Board?
>
> a.   Can such interpretive rulings be made retroactive to mobile homes manufactured prior to the effective date of the ruling?

      b.   Is the interpretive ruling of the Board
           binding on the Commissioner of the
           Department of Labor and Standards?

In the light of the authority given the Board by Section 13 to hear appeals as to the applicability of the Act, it is our opinion that the Board must necessarily interpret and construe the standards, rules and regulations whose applicability is in question in order to determine if the person or party appealing is subject thereto.

However, the fact that the Board has authority to interpret the Uniform Standards Code for Mobile Homes when its applicability is being appealed does not necessarily imply that it has the power to issue interpretive rulings.

When proceeding under Sec. 13 of the Act, the Performance Certification Board is acting in a quasi-judicial capacity, rather than exercising a legislative function. It is making an ad hoc interpretation and determination concerning the particular standard, rule or regulation whose applicability is being challenged, and deciding whether the appealing party is subject thereto.

The power to issue interpretive rulings, on the other hand, is in the nature of a legislative function. The authorities we have cited earlier make it clear the existence of such a power in the Board must be in the express language of the Legislature or must be necessarily implied.

It is clear from a comparison of Section 14 of the Act with Section 5(e) that the Legislature has expressly conferred certain rule-making powers upon each of the two administrative bodies in aid of their respective statutory duties. Since the rule-making powers are expressly stated in the Act, there is no need to necessarily imply such powers from the other duties expressly imposed.

We, therefore, believe that the Legislature intended that in the area of mobile home tie-down standards, the Board should have all rule-making power including the power to issue interpretive rulings. We further are of the opinion that in all other areas covered under the Act, the Legislature intended that the Department of Labor and Standards should exercise all rule-making power, including the power to issue interpretive rulings.

We believe, therefore, that Chairman Chrisner's first question should be answered that the Board does have power to render ad hoc interpretations of the Uniform Standards Code for Mobile Homes when entertaining appeals under Sec. 13 of the Act, limited, however, to the particular standard whose applicability is being challenged and to the particular party bringing the appeal. Furthermore, the Board does have the power to issue interpretive rulings upon that part of the Uniform Standards Code for Mobile Homes relating to mobile home tie-down standards under Sec. 14 of the Act. The Board does not, however, have the power to issue interpretive rulings concerning any other area covered by the Code since such broad rule-making power has been expressly conferred by statute upon the Department of Labor and Standards.

Article 1, Sec. 16 of the Texas Constitution prohibits retroactive laws. Whether an "interpretive ruling" falls within the prohibition would depend upon whether it is merely a statement of the meaning of an already existing rule or law or, on the other hand, it results in a substantive change. 1 Davis, Administrative Law Sec. 5.09 (1958); see Securities and Exchange Commission v. Chenery Corp., 332 U.S. 194 (1947).

When the Board issues an authorized rule or regulation interpreting the Uniform Standards Code for the first time, such ruling will ordinarily have a retroactive effect. In fact, such a retroactive effect may be required in order for the Board to satisfy its statutory duty "to protect the health and safety of the occupants and the public."

However, when the Board attempts to issue an authorized rule or regulation which changes the already settled interpretation of the Uniform Standards Code for Mobile Homes, it must weigh more carefully the delicate balance of legal, equitable, and constitutional rights that might be disturbed   by a retroactive effect.

Thus, in answer to part (a) of Chairman Chrisner's first question, we believe only the following general statements are appropriate. When issuing an authorized ruling or decision which interprets the Uniform Standards Code for Mobile Homes in the first instance, the Board ruling may have a retroactive effect, and in some situations, must be retroactive in order for the Board to comply with its statutory duties. When issuing an authorized ruling or decision which changes the already settled interpretation of the Uniform Standards Code for Mobile Homes, the Board ruling should normally operate prospectively so as not to invade legal, equitable, and constitutional rights that might be disturbed by a retroactive effect.

Part (b) of Chairman Chrisner's first question asks:

Is the interpretive ruling of the Board
binding on the Commissioner of the Depart-
ment of Labor and Standards?

Referring to our previous statement, the Board only has rule-making power, including the power to issue interpretive rulings, in the area of mobile home tie-down standards. Article 5221f, Sec. 14, V. T. C. S. Rule-making power concerning all other provisions of the Act is expressly delegated to the Department of Labor and Standards by Article 5221f, Sec. 5(e), V. T. C. S. Furthermore, in response to Commissioner St. Clair's second question set out earlier in this opinion, we stated that the Board has been delegated the authority to enforce mobile home tie-down standards; that the Board has access to staff assistance provided for it by the Department of Labor and Standards; and that the Board may establish specific enforcement policies and procedures binding on the Texas Department of Labor and Standards only with regard to mobile home tie-down standards.

In response to part (b) of Chairman Chrisner's first question, we therefore, are of the opinion that only the interpretive rulings of the Board regarding mobile home tie-down standards under Sec. 14 of the Act are binding on the Commissioner of the Department of Labor and Standards.

Chairman Chrisner's final question asks:

Under Article 5221f, does the Performance
Certification Board have the authority to adopt
amendments to the Uniform Standards Code for
Mobile Homes setting standards which are not
specifically contained in the ANSI Standard
A119.1 provided, however, that such amend-
ments are responsible and consistent with the
fundamental principles adopted, recommended
and issued by the American National Standards
Institute?

We reply to this question in the affirmative relying on our previous answer in response to Commissioner St. Clair's third question. The Board has authority under Sec. 4(c), Article 5221f, V. T. C. S., to adopt

changes or amendments to the previously adopted Texas Uniform Standards Code for Mobile Homes, which changes or amendments are not specifically contained in the ANSI Standard A119.1, provided that:

(1) the changes or amendments are consistent with the Board's statutory responsibility to protect the health and safety of the occupants and the public; and

(2) the changes and amendments to the Uniform Standards Code for Mobile Homes adopted by the Board are reasonably consistent with the fundamental principles applicable to mobile homes as adopted, recommended, and issued by the American National Standards Institute.

## S U M M A R Y

1. The Performance Certification Board has no authority or power to provide for enforcement exemptions, exclusions, variances, or grandfather clauses under Article 5221f, V. T. C. S., the Texas Mobile Home Standards Act, except in the rather limited area of mobile home tie-down standards as stated in Section 14 of that Act.

2. The Performance Certification Board has no authority to establish enforcement policies or procedures binding on the Texas Department of Labor and Standards concerning any mobile home provisions under the Act other than mobile home tie-down standards.

3. The Performance Certification Board has authority under Sec. 4(c) of the Act to adopt changes or amendments to the previously adopted Texas Uniform Standards Code for Mobile Homes, which changes or amendments have not been made by the American National Standards Institute.

4.  The Performance Certification Board has the authority under Sec. 4 of the Act to adopt standards and requirements not adopted by the American National Standards Institute, provided that such standards and requirements are responsible and "reasonably consistent with the fundamental principles adopted, recommended, or issued as ANSI Standard A119. 1"

5.  The Performance Certification Board has the authority to adopt amendments to the Uniform Standards Code for Mobile Homes, which amendments are not specifically contained in the ANSI Standard A119. 1; provided, however, that such amendments are responsible and reasonably consistent with the fundamental principals adopted, recommended and issued by the American National Standards Institute.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

LARRY F. YORK, First Assistant

DAVID M. KENDALL, Chairman
Opinion Committee

p. 1924