

# The Attorney General of Texas

**JIM MATTOX**
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1001 Texas, Suite 700
Houston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

March 24, 1986

Mr. James Ken Newman
Chairman
Texas State Board of Registration
   for Professional Engineers
P. O. Drawer 18329
Austin, Texas    73760

Opinion No. JM-457

Re: Validity of proposed disciplinary rule of the Board of Registration for Professional Engineers

Dear Mr. Newman:

You wish to know whether a proposed amendment to the Board of Registration for Professional Engineers Rule 131.151, revising Disciplinary Rule 5.4, is within the authority of the board to promulgate. We conclude that it is not.

Disciplinary Rule 5.4 presently reads as follows:

> (iv) DR 5.4.. It shall be a violation of the Texas Engineering Practice Act for a registrant to submit or request a competitive bid to perform engineering services for any state agency, political subdivision, county, municipality, district, authority, or publicly owned utility of the State of Texas, or for any agency of other entity of the federal government, when the procurement of such professional services is in violation of the state's Professional Services Procurement Act or the Federal Property and Administrative Services Act of 1949, as amended, respectively.

> (I) For purposes of this disciplinary rule, the board has adopted the Supreme Court of Texas' definition of competitive bidding, which in part is as follows:

>> Competitive bidding . . . contemplates a bidding on the same undertaking upon each of the same material items covered by the contract; upon the same thing. It requires that all bidders be placed upon the same plane of equality and that they each bid upon the same terms and conditions involved in all the items and parts of the contract, and that the

proposal specify as to all bids the same, or substantially similar specifications.

(Texas Highway Commission v. Texas Association of Steel Importers, Inc., 372 S.W.2D 525, Texas 1963); however,

(II) the engineer shall not be considered in violation of the Act in cases where his engineering services may legally be offered, furnished, or performed as an integral part of research and development programs, construction projects, manufactured products, processes, or devices, which are to be offered, performed, supplied, or obtained on the basis of competitive bids.

The proposed amendment reads as follows:

(iv) DR 5.4. As public policy, competitive bidding for professional engineering services for public works is prohibited by state and federal law, and participation in such bidding activities by any engineer registered in this state shall be considered a violation of the Texas Engineering Practice Act.

I. Where there is a competitive situation in the procurement of professional engineering services by any state agency, political subdivision, county, municipality, district, authority, or publicly owned utility of the State of Texas, or by any agency or other entity of the federal government, all registered engineers involved will assure that such professional contracts are awarded in conformance with the appropriate procurement laws; that selection of the best engineer for the contract is sought and made on the basis of demonstrated competence and overall qualifications, subject to negotiation of a fair and reasonable fee; that only after selection by the public agency on the basis of demonstrated competence and overall qualifications will the engineer provide proposed or estimated costs for that project and enter into negotiations with the public agency concerning a fair and reasonable fee for the engineering services to be rendered; and that if an agreement cannot be reached on the amount of a fair and reasonable fee, the engineer shall terminate negotiations and withdraw from consideration, and the next best engineer may

> enter into negotiations with the public agency for the awarding of the contract without such conduct constituting a violation of the Texas Engineering Practice Act. Registrants shall follow these procedures until a contract is successfully awarded. (Emphasis added).

Essentially the proposed amendment to Disciplinary Rule 5.4 would require a bifurcated process whenever a professional engineer is to be selected to work on a public project. The first stage of the process involves selection of an engineer by the public agency on the basis of "demonstrated skill and overall qualifications"; only _after_ selection may the engineer provide information as to proposed or estimated costs and then enter into negotiations with the public agency.

The process set forth in the proposed amendment substantially tracks the process set forth in the federal statutes governing selection by federal agencies of architects and engineers. See 40 U.S.C. §§541 _et seq._ In the first stage of the federal process each agency head requests data from architectural and engineering firms and, for each proposed project, evaluates such data, together with any such information submitted by other firms. After discussions with no less than three firms, and on the basis of established and published criteria, the agency selects no less than three firms deemed to be the most highly qualified to provide the services required. In the second stage of the process, the agency head then enters into negotiation with the firm selected as the most qualified. If the agency head cannot negotiate a satisfactory contract with the first firm selected, he shall enter into negotiations with the second firm chosen, and so on with the third.

Generally, the powers of an administrative agency are derived entirely from legislative enactment. Corzelius v. Railroad Commission, 182 S.W.2d 412, 415 (Tex. Civ. App. - Austin 1944, no writ); Railroad Commission v. Fort Worth & Denver City Railway Co., 161 S.W.2d 560, 561 (Tex. Civ. App. - Austin 1942, writ ref'd w.o.m.). An agency has only such powers as are expressly conferred on it by statute, Stauffer v. City of San Antonio, 344 S.W.2d 158, 160 (Tex. 1961); Railroad Commission v. Fort Worth & Denver City Railway Co., supra, together with those powers necessarily implied from powers and duties expressly given or imposed. City of Sherman v. Public Utility Commission of Texas, 643 S.W.2d 681, 686 (Tex. 1983); Brown v. Humble Oil & Refining Co., 83 S.W.2d 935, 941 (Tex. 1935). If the statutes do not grant an agency the power to do a thing, then it has no such power. Nueces County Water Control and Improvement District v. Texas Water Rights Commission, 481 S.W.2d 924, 929 (Tex. Civ. App. - Austin 1972, writ ref'd n.r.e.). You contend that the board is conferred authority to promulgate the rule you propose by section 8(b) of article 3271a, V.T.C.S., the Texas Engineering Practice Act, which contains the following in pertinent part:  "The [b]oard may

promulgate rules restricting competitive bidding." We conclude for two reasons that the above sentence confers no such authority.

First, without specifying the contours which any rule promulgated by the board to restrict competitive bidding may take, we conclude that any rule so promulgated cannot reach a situation in which a political subdivision of the state seeks to procure the professional services of an engineer.

The procedure by which political subdivisions of this state are governed with respect to the procurement of professional services is article 664-4, V.T.C.S., which provides the following:

> Section 1. This Act shall be known and may be cited as the 'Professional Services Procurement Act.'

> Sec. 2. For purposes of this Act the term 'professional services' shall mean those within the scope of the practice of accounting, architecture, optometry, medicine or professional engineering as defined by the laws of the State of Texas or those performed by any licensed architect, optometrist, physician, surgeon, certified public accountant or professional engineer in connection with his professional employment or practice.

> Sec. 3. No state agency, political subdivision, county, municipality, district, authority or publicly-owned utility of the State of Texas shall make any contract for, or engage the professional services of, any licensed physician, optometrist, surgeon, architect, certified public accountant or registered engineer, or any group or association thereof, selected on the basis of competitive bids submitted for such contract or for such services to be performed, but shall select and award such contracts and engage such services on the basis of demonstrated competence and qualifications for the type of professional services to be performed and at fair and reasonable prices, as long as professional fees are consistent with and not higher than the published recommended practices and fees of the various applicable professional associations and do not exceed the maximum provided by any state law.

> Sec. 4. Any and all such contracts, agreements or arrangements for professional services negotiated, made or entered into, directly or

> indirectly, by any agency or department of the State of Texas, county, municipality, political subdivision, district, authority or publicly-owned utility in any way in violation of the provisions of this Act or any part thereof are hereby declared to be void as contrary to the public policy of this State and shall not be given effect or enforced by any Court of this State or by any of its public officers or employees. (Emphasis added).

Section 8 of Acts 1971, Sixty-second Legislature, chapter 38, page 73, the emergency provision of the Act, contains the following language detailing the public policy considerations prompting the passage of the Act:

> The fact that the selection of certified public accountants, architects, physicians, optometrists, surgeons and professional engineers on the basis of the lowest bid places a premium on incompetence and is the most likely procedure for selecting the least able or qualified and the most incompetent practitioner for the performance of services vitally affecting the health, welfare and safety of the public and that, in spite of repeated expressions of the legislature excepting such professional services from statutes providing for competitive bidding procedures, some public officers continue to apply competitive bidding procedures to the selection of such professional personnel, creates an emergency of the greatest public importance to the health, safety and welfare of the people of Texas. . . . (Emphasis added).

By whatever phrase the means by which political subdivisions procure professional services is called, it is manifestly not "competitive bidding." The legislature has unequivocally declared its intent that political subdivisions of this state not procure professional services through the process commonly known as "competitive bidding." Any statute which confers to a licensing agency the authority to restrict the competitive bidding practices of its licensees could not reach a situation in which a political subdivision seeks the professional services of an engineer because political subdivisions cannot procure professional services by competitive bidding. Section 8(b) can logically only reach those situations in which the practice of competitive bidding is not otherwise forbidden by law or is affirmatively permitted or required; such a rule could not reach a situation in which competitive bidding is affirmatively prohibited.

There is a second, even more compelling, reason. Even if we were to assume _arguendo_ that section 8(b) somehow provides authority for the board to promulgate the amendment which you propose, we would have to declare that the rule is in violation of Texas statutory law, specifically article 664-4, V.T.C.S. The rulemaking power of administrative agencies does not permit the promulgation of rules which are inconsistent with the expression of the legislature's intent in statutes other than those under which the rules are promulgated. Thus, when the legislature acts with respect to a particular matter, the administrative agency may not so act with respect to the matter as to nullify the legislature's actions, even though the matter is within the agency's regulatory field. _State v. Jackson_, 376 S.W.2d 341, 344-45 (Tex. 1964); _Martinez v. Texas Employment Commission_, 570 S.W.2d 28, 31 (Tex. Civ. App. - Corpus Christi 1978, no writ). In a brief submitted to this office in support of your proposed amendment, it is suggested that the proposed rule governs the conduct of registrants of your board only, that it in no way regulates the procedures to be employed by the political subdivisions themselves. This suggestion is disingenuous at best. The amendment which you propose would effectively impose on state and local governments the same procedures which the United States Congress has imposed on the federal government.

The proposed rule violates the Professional Services Procurement Act in at least two ways. First, article 664-4, V.T.C.S., does not contemplate a bifurcated process; rather, the act requires that political subdivisions must award contracts for professional services in a one-step process to a professional who is selected

> on the basis of demonstrated competence and quali-
> fications for the type of professional services to
> be performed and at fair and reasonable prices, as
> long as professional fees are consistent with and
> not higher than the published recommended practices
> and fees of the various applicable professional
> associations and do not exceed the maximum provided
> by any state law.

V.T.C.S. art. 664-4, §3. If the Texas Legislature had intended that state agencies and local governments employ a two-step procedure similar to that set forth in the federal act when procuring professional services, it could have done so. But it clearly did not. Second, the proposed rule would effectively eviscerate the clear statutory requirement that fees be considered as a factor in the awarding of such contracts for professional services. As we stated in Attorney General Opinion JM-155 (1984).

> The clear terms of the Act itself do not merely
> _permit_ the consideration by the agency of the fees
> charged for certain professional services, but
> _require_ it. While the Act expressly prohibits the

awarding of contracts for certain professional services on the basis of competitive bids, it clearly requires an agency to award such contracts 'on the basis of demonstrated competence and qualifications for the type of professional services to be performed <u>and at fair and reasonable prices.</u>' V.T.C.S. art. 664-4, §3 (emphasis added). Section 3 goes on to require that such professional fees be 'consistent with and not higher than the published recommended practices and fees for the various applicable professional associations and do not exceed the maximum provided by any state law.' Therefore, the imposition of fees must be <u>one</u> factor considered by any agency in awarding a contract for such professional services; however, it cannot be the <u>only</u> factor to be considered.

Accordingly, we conclude that the proposed amendment to Disciplinary Rule 5.4 by the board is not authorized by the Texas Engineering Practice Act.

## S U M M A R Y

The Board of Registration for Professional Engineers is not conferred authority by the Texas Engineering Practices Act to promulgate its proposed amendment to board Rule 131.151 revising Disciplinary Rule 5.4.

Very truly yours,

J I M   M A T T O X
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

ROBERT GRAY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Jim Moellinger
Assistant Attorney General