

# The Attorney General of Texas

March 20, 1986

**JIM MATTOX**
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711-2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1 Texas, Suite 700
Houston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

John W. Davis, O.D.
Chairman
Texas Optometry Board
1300 E. Anderson Lane
Suite C-240
Austin, Texas    78752

Opinion No.  JM-454

Re:    Clarification of MW-499 (1982)
Use of topical ocular pharmaceutical
agents by optometrists

Dear Dr. Davis:

You have requested reconsideration of Attorney General Opinion MW-499 (1982) which found unconstitutional section 3.06(d)(5) of the Medical Practice Act. This provision authorizes a licensed optometrist to administer certain drugs to patients pursuant to a standing delegation order issued by a physician. On reconsideration of Attorney General Opinion MW-499, and on consideration of additional authorities, we have concluded that section 3.06(d)(5) need not be held unconstitutional.

Section 3.06(d)(5) of the Medical Practice Act, article 4495b, V.T.C.S., deals with the administration by optometrists of topical ocular pharmaceutical agents, which are drugs applied to the eye to aid in examining it.

Section 3.06(d)(5) reads in part:

   (d)  This Act shall be so construed that:

   . . . .

   (5)  (A) A duly licensed and qualified optometrist may administer topical ocular pharmaceutical agents in the practice of optometry as provided by this subdivision. These pharmaceutical agents may not be used for therapeutic purposes.

   (B)  To be entitled to use topical ocular pharmaceutical agents in the practice of optometry, an optometrist must possess a valid standing delegation order that:

   (1)  is issued to the optometrist by an area physician licensed to practice medicine in this state; and

(ii) authorizes the use of the pharmaceutical agents authorized by this subdivision.

(C) On request, an optometrist will be issued a standing delegation order described by Paragraph (B) of this subdivision unless the physician acting as a reasonable and prudent physician determines that denial is within the scope of sound medical judgment as it pertains to optometry, or that it is not in the public interest, and the basis for denial shall be given to the requesting optometrist in writing if requested. It is necessary that the physician have knowledge of the requesting optometrist, and if not, then same shall be good cause for denial.

(D) A standing delegation order issued under this subdivision or a representation of the order will be prominently displayed in the office of the optometrist. The board will prescribe the form of the standing delegation order and the certificate or representation of the order. The standing delegation order, as a minimum, will:

(i) be in writing, dated and signed by the physician;

(ii) specify the available topical ocular pharmaceutical agents, including but not limited to topical anesthetics and dilating agents, to be administered in the office; and

(iii) specify that said agents shall not be used for therapeutic purposes.

(E) On the complaint of any person or on its own initiative, the board of medical examiners may cancel a standing delegation order issued under this section if it determines that the optometrist possessing the order has violated the standing delegation order or this section.

(F) Except as provided by Paragraph (E) of this subdivision, a standing delegation order issued under this subdivision remains valid as long as:

(i) the physician who issued the order is a resident of this state and is licensed to practice medicine in this state;

(ii) no irregularities are found on annual review; and

> (iii)   the order is not canceled for good cause by either party.
>
> (G)   A physician who has issued a standing delegation order in compliance with this sub-division is immune from liability in connection with acts performed pursuant to the standing delegation order so long as he has used prudent judgment in the issuance or the continuance of the standing delegation order.
>
> (H)   Nothing herein is intended to limit or expand the practice of optometry as defined by law.   (Emphasis added).

Attorney General Opinion MW-499 (1982) concluded that subsection 3.06(d)(5) of article 4495b, V.T.C.S., was unconstitutional because it authorized physicians to act as licensing agents for the state but lacked sufficient statutory standards to govern the physician's discretion.   On reexamination, we conclude that section 3.06(d)(5) is not a licensing provision.   Instead, it is comparable to other provisions of law whereby physicians may authorize non-physicians to administer certain drugs.   See V.T.C.S. art. 4476-14, §§2(e), 4(2) (agents or employees of physicians, dentists, podiatrists and veterinarians may possess dangerous drugs); V.T.C.S. art. 4476-15, §§1.02(9), (24)(A), 3.01(e)(1) (agent or employee of dispenser of controlled substances may possess such substances); V.T.C.S. art. 4495b, §3.06(d)(4) (administration of dangerous drugs in Department of Health programs to prevent or treat certain communicable diseases).

Even prior to the enactment of the present version of the Medical Practice Act, a physician could delegate medical acts to another person, without directly supervising his performance.   Tatro v. State of Texas, 516 F. Supp. 968, 976 (N.D. Texas 1981), aff'd 703 F. 2d 823 (5th Cir. 1983) modified on other grounds, 104 S.Ct. 3371 (1984); see Thompson v. Texas State Board of Medical Examiners, 570 S.W.2d 123, 129-30 (Tex. Civ. App. - Tyler 1978, writ ref'd n.r.e.).   The physician had to ascertain that the person providing treatment was adequately qualified to do so.   516 F. Supp. at 976; see also Attorney General Opinion H-1295 (1978).

In our opinion, section 3.06(d)(5) merely authorizes a physician to delegate certain medical acts.   The statute does not give a physician absolute discretion to issue the order to an optometrist. The physician must deny a request for a standing order if, "acting as a reasonable and prudent physician" he determines that "sound medical judgment" or "the public interest" dictates denial.   Thus, a physician must exercise his judgment in granting or denying a standing order according to a standard resembling the standard to which he would be held accountable in a malpractice suit.   See Hood v. Phillips, 554 S.W.2d 160 (Tex. 1977) (plaintiff must establish that physician has used treatment which a reasonable and prudent physician would not use

under similar circumstances). The physician's failure to exercise prudent judgment in issuing or continuing a standing order subjects him to liability in connection with acts performed pursuant to the standing order. V.T.C.S. art. 4495b, §3.06(d)(5)(G). Finally, he may not issue a standing order unless he has knowledge of the requesting optometrist. Id. §3.06(d)(5)(C).

If section 3.06(d)(5) is constitutional and still in effect, you request an answer to the questions submitted by Speaker Clayton in his request for an Attorney General Opinion dated March 5, 1982. His questions were directed at determining whether the Board of Medical Examiners had authority to regulate delegations made under section 3.06(d)(5). We have summarized his questions and grouped closely related questions together.

He first inquired whether the Board of Medical Examiners might prescribe only the form of the standing delegation order or also substantive requirements of delegations made under section 3.06(d)(5).

Section 2.09(a) of the Medical Practices Act authorizes the board to make rules, regulations and bylaws not inconsistent with the Act to regulate the practice of medicine. Section 3.06(d)(5), however, limits the otherwise broad authority of the Board of Medical Examiners to regulate the practice of medicine. See V.T.C.S. art. 4495b, §2.09(a); Attorney General Opinion MW-318 (1981). Its role in implementing section 3.06(d)(5) is limited to prescribing the form of the order and cancelling it if the optometrists have violated either the order or the statutory provision. See §3.06(d)(5)(D), (E). See generally State v. Jackson, 376 S.W.2d 341 (Tex. 1964) (legislature may withdraw from administrative agency a matter otherwise within its regulatory field); Railroad Commission v. Fort Worth and D.C. Railway Company, 161 S.W.2d 560 (Tex. Civ. App. - Austin 1942, writ dism'd w.o.m.) (board may not enlarge its powers by its own orders).

Section 3.06(d)(5)(D) authorizes the board to "prescribe the form of the standing delegation order." (Emphasis added). Although "form" is not defined in the act, section 1.03(11) provides that it should have a meaning consistent with common law.

"Form" is generally regarded as the antithesis of "substance." See, e.g., Wilson v. Wagner, 211 S.W.2d 241 (Tex. Civ. App. - San Antonio 1948, writ ref'd n.r.e.); Gevurtz v. Myers, 500 P.2d 730 (Ore. Ct. App. 1972). See also Application of Trico Electric Cooperative, Inc., 377 P.2d 309, 315 (Ariz. 1962) (form distinguished from content).

In our opinion, "form" in section 3.06(d)(5)(D), denotes structure and is to be distinguished from substance. We conclude that the board may prescribe only the form and not the substance of standing delegation orders. Authority over the substantive content of a standing delegation order rests with the individual physician. See V.T.C.S. art. 4495b, §1.02(8); compare, e.g., §3.06(d)(1). Of course,

whether a particular administrative regulation deals with "form" or "substance" would have to be determined on a case-by-case basis.

He next asked whether the board might limit the types of topical optical pharmaceutical agents that could be included in a section 3.06(d)(5) delegation or prevent their administration to patients in a certain age group.

Sections 3.06(d)(5)(A) and (D) are relevant to this inquiry. Subsection (A) reads as follows:

> A duly licensed and qualified optometrist may administer topical ocular pharmaceutical agents in the practice of optometry <u>as provided by this subdivision</u>. These pharmaceutical agents may not be used for therapeutic purposes. (Emphasis added).

Subsection (D) reads in part:

> The board will prescribe the form of the standing delegation order and the certificate or representation of the order. The standing delegation order, as a minimum, will:
>
> . . . .
>
> (ii) specify the available topical ocular pharmaceutical agents, <u>including but not limited to</u> topical anesthetics and dilating agents, to be administered in the office; and
>
> (iii) specify that said agents shall not be used for therapeutic purposes. (Emphasis added).

Section 3.06(d)(5)(D)(ii) explicitly permits physicians to specify any of the available topical ocular pharmaceutical agents and the board may not narrow their authority. Of course, individual physicians may decide to limit the pharmaceutical agents named in orders they issue, since their immunity from liability for acts performed pursuant to a standing delegation order depends upon their exercising prudent judgment in issuing or continuing the order. In addition, no pharmaceutical agent may be used for "therapeutic purposes." <u>See</u> Webster's New International Dictionary (2d Ed. 1957) (therapeutic means "of or pertaining to the healing art; concerned with remedies for diseases; curative."). Whether a particular agent can be used only for therapeutic purposes, or whether it is used for therapeutic purposes in a particular case, are fact questions which cannot be answered in the opinion process.

The board may not impose requirements on standing delegation orders pertaining to the patient's age. Section 3.06(d)(5)(A) provides that a

> duly licensed and qualified optometrist may
> administer topical ocular pharmaceutical agents in
> the practice of optometry <u>as provided by this
> subdivision</u>. (Emphasis added).

The statute does not refer to the patient's age. The board may not
substantively limit a physician's authority to issue a standing
delegation order by requiring it to state that the optometrist may not
use a topical ocular pharmaceutical agent on a particular age group.
Of course, the issuing physician may so limit the use of the
pharmaceutical agents he names in the order.

He also asked whether the board could require as a prerequisite
to issuing a standing order that a doctor have authority to admit
patients to an area hospital.

Section 3.06(d)(5)(B) provides that:

> To be entitled to use topical ocular phar-
> maceutical agents in the practice of optometry, an
> optometrist must possess a valid standing delega-
> tion order that:
>
> (1) is issued to the optometrist <u>by an area
> physician licensed</u> to practice medicine in this
> state . . . . (Emphasis added).

Section 3.06(d)(5)(B)(1) refers to "an area physician" but that
term is not defined in the statute. The board could, pursuant to
section 2.09(a) of the act, promulgate valid rules defining an "area
physician." Conceivably, the requirement in question could be among
these criteria. For example, a physician practicing in a distant
locale might be deemed an "area physician" if he is authorized to
admit patients to an "area" hospital; in this context, the use of this
standard would appear to be permissible. On the other hand, if a
physician would be deemed an "area physician" as a matter of law,
<u>i.e.</u>, because he lives and practices in the "area," he could not be
prevented from issuing a standing order on the ground that he is not
authorized to admit patients to an area hospital.

He next asked whether the board could adopt a rule requiring the
optometrist to inform the delegating physician of pathological con-
ditions discovered during the optometric exam. The rule in question
is subsection (b)(13) of rules proposed by the Board of Medical
Examiners:

> [The standing delegation order shall] set forth
> any specialized circumstances under which a person
> performing same is to immediately communicate with
> the physician concerning the patient's condition
> including the requirement of immediate notifica-
> tion of the delegating physician of signs and

> symptoms of ocular disease which are vision
> threatening or which can permanently affect the
> sight of the patient and which require medical or
> surgical treatment to include, but not necessarily
> be limited to signs and symptoms of the following
> diseases or medical conditions . . . .

Under section 2.09(a) of the act, the board:

> may make rules, regulations, and bylaws <u>not
> inconsistent with this Act</u> as may be necessary for
> the governing of its own proceedings, the
> performance of its duties, <u>the regulation of the
> practice of medicine in this state,</u> and the
> enforcement of this Act. (Emphasis added).

The subsection (b)(13) requirement may reasonably be charac-
terized as "necessary for . . . the regulation of the practice of
medicine in this state." We do not we believe the proposed regulation
is inconsistent with any provision of section 3.06(d)(5), or any other
provision of the act. We therefore conclude that the regulation is
not impermissible <u>per se</u>. Whether it is inconsistent with some
specific statute or a regulation of the Texas Optometry Board would
have to be determined on a case-by-case basis.

Our conclusion about the validity of subsection (b)(13) is not
inconsistent with our previous determination that the board may not
impose substantive limitations upon a physician's authority to issue a
standing delegation order. The proposed regulation does not impose
such a limitation, but <u>merely</u> requires that an optometrist report
certain information to the physician under whose standing delegation
order he is operating.

His last question asserts that a physician who reasonably issues
a section 3.06(d)(5) delegation is immune from liability for the acts
of an optometrist acting within the scope of the delegation. It then
asks whether a physician may delegate other tasks to an optometrist
under a traditional standing order where the physician remains liable
for the acts of the optometrist.

Section 3.06(d)(5)(G) provides that:

> A physician who has issued a standing delegation
> order in compliance with this subdivision is
> immune from liability in connection with acts
> performed pursuant to the standing delegation
> order so long as he has used prudent judgment in
> the issuance or the continuance of the standing
> delegation order.

The answer to this question depends upon the nature of the "other
task" and other relevant facts, and therefore must be determined on a

case by case basis.  See V.T.C.S. art. 4552-5.13(d) (employment of optometrist by physician); Attorney General Opinion MW-318 (1981), however, made some general observations which might prove helpful:

> The liability of a physician for the negligence of others is determined by examining the principles of agency law.  Sparger v. Worley Hospital, Inc., 547 S.W.2d 582 (Tex. 1977).  The master is liable for the torts of his servant committed in the course of his employment.  Newspapers, Inc. v. Love, 380 S.W.2d 582 (Tex. 1964).  The master's vicarious liability for his employee's torts is based upon his right to control the details of the work.  Id.  The supervising physician need not be the actual employer of the servant in order to be vicariously liable for his torts, so long as he has the right to control the details of the work.  Sparger v. Worley Hospital, Inc., supra.

## S U M M A R Y

Section 3.06(d)(5) of article 4495b, V.T.C.S., is constitutional.  The Board of Medical Examiners may regulate only the form and not the substance of a standing delegation order issued to an optometrist pursuant to section 3.06(d)(5) of article 4495b, V.T.C.S.  The delegating physician has authority to determine the substance of the order.

Very truly yours,

JIM   MATTOX
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

ROBERT GRAY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Susan L. Garrison
Assistant Attorney General