The STATE of Texas, Petitioner,

v.

John B. JACKSON et al., Respondents.

No. A–9849.

Supreme Court of Texas.

March 4, 1964.

Waggoner Carr, Atty. Gen. of Texas, Austin, Fred D. Ward and James P. Briscoe, Asst. Attys. Gen., for petitioner.

Jackson & Jackson, Joe F. Sandlin, Anahuac, for respondents.

CALVERT, Chief Justice.

Suit was by the State of Texas, acting by and through the Game and Fish Commission, successor state agency to Game, Fish & Oyster Commissioner and predecessor to the present Parks and Wildlife Department, to enjoin violation by respondents of a regulation promulgated in a proclamation of the Commission. The trial court denied the relief sought, and the Court of Civil Appeals has affirmed. 370 S.W. 2d 797.

We affirm the judgment of the Court of Civil Appeals.

Respondents were using nets of a certain type in the taking of fish from Galveston Bay in Chambers County pursuant to a claim of right authorized by Acts Regular Session, 55th Leg., 1957, ch. 480, p. 1394, noted under Article 978j in Vernon's Penal

Code. The Act will be referred to hereafter as House Bill 835. The Commission's regulation, promulgated in a proclamation dated May 27, 1959, prohibited the use of the type of net being used by respondents in the waters where the same was being used. Legislative authority of the Commission for adoption of the regulation was first authorized in Art. 39 of an act of the Legislature passed in 1919. See Acts First Called Session, 36th Leg., ch. 73, p. 191, 204, now partially codified as Article 4045, Revised Civil Statutes of Texas, also shown as Art. 4045, Vernon's Texas Civil Statutes.

The trial court's judgment denying injunctive relief is predicated on its conclusion that "Article 4045 * * * is in direct conflict with * * * Article 978j of Vernon's Annotated Penal Code, said Article 978j being enacted at a date subsequent to the enactment of Article 4045 * * *." The conclusion indicates a belief by the trial judge that House Bill 835 repealed Art. 4045, Vernon's Texas Civil Statutes, at least to the extent of any conflict between the two. The Court of Civil Appeals expressly so held.

The parties to the litigation and Sportsmen's Clubs of Texas, author of an amicus curiae brief, also treat the problem as one of repeal, or at least partial repeal, of Art. 4045 by House Bill 835. We do not so regard the problem. We regard the problem, rather, as one of suspension of the power of an administrative agency to act with respect to a matter which, although within the agency's general field of regulation, has been preempted by action of the Legislature itself.

The Act of 1919 was a comprehensive Act creating the Office of Game, Fish & Oyster Commissioner, and prescribing the terms and conditions upon which all forms of marine life might be taken from the waters of the State. Art. 39 of the Act made use of nets and seines, except minnow and shrimp seines, unlawful in all tidal and coastal waters during the months of June, July and August, and the use of nets and seines, except minnow seines, unlawful in specified coastal waters at any time. Galveston Bay was not specified. The Article then authorized the Game, Fish & Oyster Commissioner, whenever he deemed best for protection of fish life, to close, upon notice, tidal waters and bays to all forms of netting and seining, except with minnow seines of not more than twenty feet in length. The Article then provided a misdemeanor penalty for taking fish with prohibited nets and seines in "such closed waters," and authorized seizure and destruction of prohibited fishing devices. Art. 39 and certain other Articles of the Act of 1919 were amended by Acts Regular Session, 38th Leg., ch. 139, p. 294, 297, but the amendment is not material to this decision.

When the Laws of Texas were codified in 1925, the entire substantive content of Art. 39 of the 1919 Act, as amended in 1923, was carried forward as Art. 941 of the Penal Code. In addition, the portion of Art. 39 conferring regulatory authority upon the Game, Fish & Oyster Commissioner was carried forward into Art. 4045 of the Revised Civil Statutes. The penal provisions of Art. 39 were carried into Art. 941 of the Penal Code, but were not carried into Art. 4045 of the Revised Civil Statutes. Art. 941 of the Penal Code was amended and re-enacted in 1929. See Acts Regular Session, 41st Leg., 1929, ch. 119, p. 269. By the amendment Galveston Bay was listed as one of the water areas in which use of nets and seines was declared to be unlawful, and the provisions conferring regulatory authority on the administrative agency were entirely omitted from the Article. Between 1929 and 1957 many local and special laws were enacted making *unlawful* or *lawful* the use of nets for the taking of fish from designated coastal waters. It was in this statutory context that House Bill 835 was enacted by the Legislature in 1957.

Section 1 of House Bill 835 provides:

"It shall be unlawful for any person to place or set, or have in his use or

possession, in or on any of the waters of that portion of Galveston Bay and Trinity Bay lying within Chambers and Harris Counties, Texas, north of a line extending from Eagle Point to Smith Point, any set net, or gill net, trap or similar device for the purpose of catching fish. Provided it shall be lawful to use trammel nets which shall not exceed a length of twelve hundred (1200) feet and shall have at least a three and one-half (3½) inch stretch mesh."

The proclamation of the Game and Fish Commission declares:

"* * * it is hereby proclaimed and decreed by the Game and Fish Commission of the State of Texas that it shall be unlawful for any person to use any seines or nets or to drag same for the purpose of taking or attempting to take any of the fish or other edible marine life, with the exception of shrimp and oysters, in the waters of Galveston Bay, Trinity Bay, East Bay and West Bay in the counties of Galveston, Chambers and Harris."

In the petition filed by the State of Texas it was alleged that defendants were violating the prohibition contained in the proclamation by fishing with nets in the waters of Galveston Bay in Chambers County. It was not alleged and it is not contended by the State that the nets used by the defendants exceeded 1200 feet in length or had a stretch mesh of less than 3½ inches. Neither was it alleged that defendants were using nets outside of the area in which their use is made lawful by H. B. 835. The position of the State is that the Game and Fish Commission could, under authority of Article 4045, close the whole of Galveston Bay to the use of the type and size of nets made lawful for use in a part of the Bay by House Bill 835.

Aside from their argument that the repealing clause of H.B. 835 ("All other laws and parts of laws in conflict herewith are hereby expressly repealed, to the extent of such conflict only.") did not repeal Article 4045 in whole or in part, an argument with which we need not deal, the State and amicus curiae seem to present two primary reasons for contending that the action of the Game and Fish Commission should be held effective and operative in the area defined in spite of the last sentence of Section 1 of H.B. 835. The reasons are: (1). That if the Legislature had never acted, fishing in the defined waters with the type of nets described would have been lawful, but the Commission would have had authority under Article 4045 to close the waters to fishing with such nets; and that the legislative declaration that fishing with such nets shall be *lawful* does not diminish the Commission's power in that respect. (2). That by placing the sentence in a penal statute the Legislature intended the word *lawful* to mean only that no criminal penalties would be imposed if nets as there described were used, and not that the Commission was shorn of power to prohibit their use. We do not regard either of the suggested reasons to be a sound basis for holding that effect may be given to the Commission's action.

 The first reason ignores the concept of legislative preemption. The Game and Fish Commission (now State Parks and Wildlife Department) is a creature of the Legislature, possessing only such powers as are delegated to it, expressly and impliedly, by the Legislature. Stauffer v. City of San Antonio, 162 Tex. 13, 344 S.W. 2d 158, 160; Brown v. Humble Oil & Refining Co., 126 Tex. 296, 83 S.W.2d 935, 87 S.W.2d 1069, 99 A.L.R. 1107, 101 A.L.R. 1393. It is elementary that the Legislature may withdraw from an administrative agency it has created any or all of the powers delegated, for authority to give includes authority to take away. Moreover, delegated powers may be withdrawn by preemption as well as by express declaration. When the Legislature acts with respect to a particular matter, the administrative agency may not so act with respect to the matter as

to nullify the Legislature's action even though the matter be within the agency's general regulatory field.

There is little case law announcing the rule last stated, no doubt because it is self-evident. The rule is thus stated in 1 Am.Jur., 2d, 946, Administrative Law, § 133: "The rulemaking power of administrative agencies does not permit the enactment of regulations which are inconsistent with the expression of the lawmakers' intent in statutes other than those under which the regulations are issued." Among the cases cited in support of the statement, and somewhat analogous, is Louisville & Jefferson County Planning & Zoning Commission v. Ogden, 307 Ky. 362, 210 S. W.2d 771. In Ogden a statute provided that "Words giving authority to three or more public officers" should be construed "as giving such authority to a majority of such officers." The Planning & Zoning Commission, consisting of ten members, including four ex-officio members two of whom seldom attended meetings, adopted a by-law declaring that five members of the Commission should constitute a quorum for the transaction of business. Authority for adoption of the by-law was asserted under the zoning statute which empowered the Commission to adopt rules and regulations for transaction of its business. The by-law was held to be in conflict with the general statute and was ruled invalid.

■ The first reason also looks at only one side of the coin. The State asserts in its brief—and we may accept as a fact—that the authority conferred on the Commission by Art. 4045 lay dormant from 1919 until 1959. But let us suppose that the Commission had issued a proclamation before 1957, as it did in 1959, declaring the use of nets in Galveston Bay in Chambers County to be *unlawful*; could we say that the legislative declaration in the last sentence of Section 1 of House Bill 835 that the use in such waters of nets as there described was *lawful* was meaningless? We think not. Surely, whether the Legislature has preempted the power to deal with the matter to the extent of its legislative enactments cannot turn on whether the Legislature or the Commission acted first.

The second reason given affords no better basis for the position of the State. Article 10, Vernon's Texas Civil Statutes, directs, with certain exceptions not pertinent here, that "The ordinary signification shall be applied to words" in the construction of civil statutory enactments; and Article 8, Vernon's Penal Code, directs that except where specially defined, words used in the Code "are to be taken and construed in the sense in which they are understood in common language, taking into consideration the context and subject matter relative to which they are employed."

In the last sentence of Section 1 of H.B. 835 the Legislature has declared that it shall be *lawful* to use trammel nets not exceeding 1200 feet in length and having a stretch mesh of at least 3½ inches for the purpose of catching fish in a part of Galveston Bay in Chambers County. In Webster's Third New International Dictionary we find the first meaning of the word "lawful" to be: "conformable to law: allowed or permitted by law: enforceable in a court of law." Black's Law Dictionary, Third Edition, defines "lawful" as "Legal; warranted or authorized by the law; having the qualification prescribed by law; not contrary to nor forbidden by the law." In the note under Black's definition we find this statement: "To say of an act that it is 'lawful' implies that it is authorized, sanctioned, or at any rate not forbidden, by law."

The Commission's proclamation declares the use of nets, including the type described in H.B. 835, for catching fish in the waters of Galveston Bay to be *unlawful*. "Unlawful" means just the opposite of "lawful." "Unlawful," says Webster, means "not lawful: contrary to or prohibited by law: not authorized or justified by law: not permitted or warranted by Law." According to Black, it means: "That which is contrary to law or unauthorized by law."

It thus appears that when an act is prohibited by law, it is "unlawful," whether or not penalties are attached to the doing of the act. It is not authority for the assessment of penalties which makes a prohibited act "unlawful"; rather, it is the prohibition of the act by law. And when the Legislature declared in H.B. 835 that the use of the nets there described should be "lawful," it did not merely remove the criminal penalties for engaging in the activity; it effectively removed all prohibitions of the activity which then may have been in the statutory law, and it preempted and suspended the power and authority theretofore conferred by Art. 4045 on the Game and Fish Commission to make the activity "unlawful" by prohibiting it. If the Legislature had said that the activity "shall not be unlawful," no one would seriously contend that the Game and Fish Commission could thereafter prohibit the activity and declare it to be "unlawful"; and yet there is no distinction in meaning to be found in a legislative declaration that an activity "shall be lawful" and a declaration that an activity "shall not be unlawful."

Much emphasis is placed by the State and amicus curiae on the need for Commission authority to close waters to fishing with nets when that activity is found by the Commission to have a detrimental effect on marine life. The State puts its position in these words: "The need for administrative closing of the bays increases when and as the Legislature increases the area of legal netting." Let it be so; the problem is one for legislative, not judicial solution. We can think of no better rule to sum up our position in the matter than that quoted in the State's brief from our opinion in State Board of Insurance v. Betts, 158 Tex. 612, 315 S.W.2d 279, 281:

"The problem of statutory construction is to ascertain the intent of the Legislature. When we abandon the plain meaning of words, statutory construction rests upon insecure and obscure foundations at best. It should perhaps be reiterated that Courts have no concern with the wisdom of legislative acts, but it is our plain duty to give effect to the stated purpose or plan of the Legislature, although to us it may seem ill advised or impracticable."

Our holding that the problem before us is one of suspension rather than repeal of Commission authority leaves the Commission with full power to act to the extent authorized by Art. 4045 if and when the Legislature decides to withdraw from the area of power preempted.

The judgment of the Court of Civil Appeals is affirmed.