

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN, TEXAS 78711

**JOHN L. HILL**
**ATTORNEY GENERAL**

November 20, 1974

The Honorable Charles R. Barden
Executive Director
Texas Air Control Board
8520 Shoal Creek Blvd.
Austin, Texas 78758

Opinion No. H- 455

Re: Authority of Air Control
Board to require that permits
be obtained prior to construc-
tion of indirect sources of air
pollution.

Dear Mr. Barden:

You have submitted two requests which raise the following four questions for our determination.

> (1) Does the Texas Clean Air Act empower the
> Texas Air Control Board to establish standards
> of performance for new stationary sources which
> have the potential for emitting air contaminants?

> (2) Does the Texas Clean Air Act give the Texas
> Air Control Board authority to require that indirect
> sources of air contaminants obtain permits to con-
> struct and operate?

> (3) If the answer to Question One is in the affirma-
> tive, does the Texas Clean Air Act give the Texas
> Air Control Board the authority to enforce federal
> regulations on new source performance standards
> promulgated under Section 111 of the Federal Clean
> Air Act pursuant to a delegation of authority by
> the administrator under Section 111(c)(1) of the
> Federal Clean Air Act?

(4) Does the Texas Clean Air Act give the Texas
Air Control Board the authority to enforce federal
regulations on hazardous air pollutants promulgated
under Section 112 of the Federal Clean Air Act
pursuant to a delegation of authority by the administrator
under Section 112(d)(l) of the Federal Clean Air Act?

Section 1.05, article 4477-5, V.T.C.S., provides:

The Texas Air Control Board is the state air
pollution control agency.  The board is the prin-
cipal authority in the state on matters relating to
the quality of air resources in the state and for
setting standards, criteria, levels and emission
limits for air content and pollution control.

Section 3.09 of article 4477-5, V.T.C.S., empowers the Texas
Air Control Board (hereafter, the Board) to make rules and regulations
consistent with the general intent and purposes of the Act.  Section 3.10(a)
allows these rules and regulations to "differ in [their] terms and pro-
visions as between particular conditions, particular sources, and
particular areas of the state."  Section 3.27 requires any person who
plans to construct any new facility or modify any existing facility which
may emit air contaminants to apply for and obtain a construction permit
from the Board.  The Board is to determine whether the construction
"will comply with applicable air control standards and the intent of the
Texas Clean Air Act."  Section 3.27 has been construed to require a
permit from the Board whenever there is a "practical possibility" that
the facility will emit contaminants into the air.  Europak, Inc. v. County
of Hunt,  507 S.W.2d 884, 887 (Tex. Civ. App. --Dallas 1974, no writ).

In our opinion these sections of the Texas Clean Air Act provide
the Board with ample authority to set standards of performance for new
stationary sources which have a "practical possibility" of emitting air
contaminants and to enforce these standards through the permit process.

Your second question is whether the Board has authority to require permits for indirect sources of air contaminants. An indirect source is one which attracts mobile source activity, 40 C.F.R. § 52.22(b), at 39 Fed. Reg. 7276 (1974). This mobile source activity is usually vehicular in nature, and examples of indirect sources are highways, office buildings, or any facility which would attract a number of mobile sources such as automobiles.

The Texas Clean Air Act makes no clear or implied reference to indirect sources. Section 1.03 defines a "new source" as a "stationary source," §1.03(8), and a "source" as a "point of origin of air contaminants," §1.03(2). While these terms are not used in section 3.27, which establishes the permit requirement, their definitions indicate that the Legislature intended to regulate only direct sources. In fact the power to regulate indirect sources was not required of state implementation plans when the Environmental Protection Agency published its initial evaluations and approvals of such plans in 1972. 37 Fed. Reg. 10842.

Section 3.27 by its terms does not require a permit for indirect sources, but only for "[facilities] which may emit air contaminants." As previously noted, indirect sources do not themselves emit pollutants. Although the Board is to consider the land use involved in a permit request, §3.27(c), it is our opinion that its jurisdiction with respect to permits is not so broadened to include indirect sources, rather that the Board is to consider the land use involved in the construction and operation of direct sources. Had the Legislature intended to give the Board authority to require permits for so broad a category as indirect sources, it would have done so by more explicit language and with more guidance.

Your third and fourth questions, dealing with enforcement of federal regulations by the Board, are answered by Attorney General Opinion H-222 (1974), which states:

> [the Board] has no authority, absent legislative
> authority, to enforce or to administer a proposed
> regulation of the Environmental Protection Agency
> which is not within its statutory jurisdiction and
> which it has not adopted as its own regulation.

Since our holding was on the basis that the Legislature had not empowered the Board to enforce federal regulations, it is of no significance that the regulation involved in H-222 was of a proposed nature whereas the regulations involved here are operative.   While 42 U.S.C.  § § 1857c-6(c)(1), and 1857c-7(d)(1) may allow the federal administrator to delegate the power to enforce federal regulations to the various states, this statute may not serve to provide the necessary authorization under state law.  "[T]he Board is a creature of the Texas Legislature and possesses only such powers as may be delegated to it by the Legislature, expressly or impliedly." Attorney General Opinion H-222 (1974). See State v. Jackson, 376 S.W.2d 341 (Tex. 1964).  Aside from failing to expressly provide the necessary authorization, the Texas Clean Air Act indicates in section 3.10(d) that the Board is to enact its own rules and regulations instead of enforcing the federal law.   That section allows the Board to include in its rules and regulations particular methods for control of emissions from motors and engines used in propelling land vehicles but requires these rules and regulations to be consistent with the federal law.  If the Legislature had envisioned enforcement of the federal law by the Board it would not have provided for this duplication and could easily have expressly so authorized the Board.

The Board has the express statutory authority to enact regulations over the subject matter of the federal statutes involved.  42 U.S.C. 1857c-6(c)(1) deals with standards of performance for new sources, and we have stated herein that the Board may establish such standards with respect to direct sources.  The Board also has complete authority over hazardous pollutants dealt with by 42 U.S.C. 1857c-7(d)(1).  V.T.C.S., art. 4477-5, § 3.14.

Although the Board may not itself enforce the federal regulations it may monitor those activities which are within the jurisdiction of the Board even though not currently subject to Board regulations. V.T.C.S., art. 4477-5, § 3.06.   Section 3.20 authorizes the Board to investigate "without limitation . . . violations and general air pollution problems or conditions."   Therefore the Board may investigate matters outside the scope of its regulatory jurisdiction.  The information so collected may be utilized in a citizen's suit under the federal act and regulations, 42 U.S.C. 1857h-2(a), which the federal act permits to be brought by the state itself.  42 U.S.C. 1857h (e).

## SUMMARY

The Texas Clean Air Act empowers the Texas Air Control Board to establish standards of performance for new stationary sources which have a "practical possibility" of emitting air contaminants.

The Texas Clean Air Act does not give the Texas Air Control Board authority to require permits for the construction and operation of indirect sources.

The Texas Clean Air Act does not empower the Texas Air Control Board to enforce federal regulations. The Board may adopt and enforce its own regulations, may monitor activities within its jurisdiction which may cause air pollution, and may investigate problems and conditions of general air pollution.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

LARRY F. YORK, First Assistant

DAVID M. KENDALL, Chairman
Opinion Committee

lg