

## Office of the Attorney General
### State of Texas

**DAN MORALES**
ATTORNEY GENERAL

September 23, 1996

Bruce A. Levy, M.D., J.D.
Executive Director
Texas State Board of Medical Examiners
P.O. Box 149134
Austin, Texas 78714-9134

Opinion No. DM-416

Re:  Whether the Texas Optometry Board
may adopt a rule authorizing a therapeutic
optometrist to administer cocaine eye drops
for diagnostic purposes   (RQ-877)

Dear Dr. Levy:

A therapeutic optometrist may, under V.T.C.S. article 4552-1.03(b), administer a topical ocular pharmaceutical agent, other than an antiviral or antiglaucoma agent, "for the purpose of diagnosing and treating visual defects, abnormal conditions, and diseases of the human eye and adnexa." The Texas Optometry Board (the "board") must, by rule, specify the topical ocular pharmaceutical agents a therapeutic optometrist may use. You ask whether the board may adopt a rule authorizing a therapeutic optometrist to administer cocaine eye drops for diagnostic purposes.[1]

Because V.T.C.S. article 4552-1.03(b) explicitly authorizes a therapeutic optometrist to administer a topical ocular pharmaceutical agent for certain diagnostic purposes, we believe the board may promulgate a rule permitting a therapeutic optometrist to administer cocaine eye drops for those diagnostic purposes. Cocaine eye drops may not, however, be an antiviral or antiglaucoma agent; furthermore, they may be used only for the purpose of diagnosing problems of the human eye and adnexa. To the extent the proposed rule authorizes a therapeutic optometrist to use cocaine eye drops to diagnose problems other than those of the human eye and adnexa, it is invalid.

We begin by briefly discussing pertinent portions of the Texas Optometry Act,[2] which provides for the practice of optometry and therapeutic optometry. Like an optometrist, a therapeutic optometrist may use "objective or subjective means" to ascertain and measure "the powers of vision of the human eye,"[3] examine and diagnose "visual defects,

---

[1]Because the proposed rule does not refer to the use of cocaine eye drops for treatment purposes, we do not consider whether the board may adopt a rule authorizing a therapeutic optometrist to use cocaine drops for treatment purposes.

[2]V.T.C.S. arts. 4552-1.02 - 7.02.

[3]See id. art. 4552-1.02(2) (defining "ascertaining and measuring the powers of vision of the human eye").

abnormal conditions, and diseases of the human eye and adnexa," and prescribe or fit corrective lenses to remedy vision defects.[4] By contrast, only a therapeutic optometrist may administer or prescribe a drug, if the therapeutic optometrist does so in compliance with the act.[5] Specifically, a therapeutic optometrist may administer a topical ocular pharmaceutical agent,[6] among other things, aside from an antiviral or antiglaucoma agent, to diagnose and treat "visual defects, abnormal conditions, and diseases of the human eye and adnexa."[7] The "adnexa" are the lids and drainage system of the eye.[8]

Under article 4552, the board must specify by rule the pharmaceutical agents a therapeutic optometrist may use in his or her practice.[9] In accordance with this directive, the board claims, it has amended title 22 of the Texas Administrative Code, section 280.5 to include among the list of permissible pharmaceutical agents "cocaine eye drops for diagnostic purposes."[10] You contend that the proposed amendment impermissibly expands the scope of practice of therapeutic optometry. As we understand your argument, cocaine eye drops may be used only in the diagnosis of Horner's syndrome.[11] A letter you enclosed with your request describes Horner's syndrome as "an extremely serious systemic disease[] affecting neurologic pathways."[12] Horner's syndrome is not, according to the letter, a disease of the eye or adnexa.[13]

---

[4]*Id.* art. 4552-1.03(b); *see* Attorney General Opinion DM-152 (1992) at 1; *see also* V.T.C.S. art. 4552-1.02(3) (defining "fitting lenses or prisms").

[5]V.T.C.S. art. 4552-1.02(7); *see* Attorney General Opinion DM-152 (1992) at 1-2.

[6]A topical ocular pharmaceutical agent is a drug applied to the eye to aid in examining it. Attorney General Opinion JM-454 (1986) at 1.

[7]V.T.C.S. art. 4552-1.03(b).

[8]*Id.* art. 4552-1.02(8).

[9]*Id.* art. 4552-1.03(d).

[10]*See* 21 Tex. Reg. 1093-94 (1996) (codified at 22 T.A.C. § 280.5) (Tex. Optometry Bd.).

[11]*See* Letter from Sam V. Stone, Jr., Attorney for Texas Ophthalmological Association, to Lois Ewald, Executive Director, Texas Optometry Board (Nov. 17, 1995).

[12]*Id.* (citing Letter from John A. McCrary, III, M.D., American Board of Ophthalmology diplomate).

[13]*Id.*

Whether Horner's syndrome is a disease of the eye or adnexa is a question of fact that we cannot resolve in the opinion process.[14] If it is not such a disease, and if cocaine eye drops' sole use as a diagnostic tool is to detect Horner's syndrome, then a therapeutic optometrist may not administer the eye drops. Moreover, because an administrative agency may not adopt a rule that is inconsistent with statute,[15] the board may not adopt a rule permitting a therapeutic optometrist to use cocaine eye drops. On the other hand, if Horner's syndrome is a disease of the eye or adnexa, or if cocaine eye drops may be used to diagnose conditions, other than Horner's syndrome, of the eye or adnexa, the board's proposed amendment to title 22 of the Texas Administrative Code, section 280.5 is proper.[16] The board is authorized to determine these fact-based questions, subject to judicial review.

We are unaware of any statute mandating a contrary result. The possession and administration of cocaine by health-care professionals is controlled by the Texas Controlled Substances Act.[17] Under that act, only a practitioner, as the act defines that term, may administer a controlled substance, and only in specified circumstances.[18] While the Controlled Substances Act does not define "practitioner" expressly to include a therapeutic optometrist, the definition encompasses any person who is permitted to administer a controlled substance in the course of professional practice. In our opinion, V.T.C.S. article 4552-1.03(b) permits a therapeutic optometrist to administer a controlled substance in the course of professional practice if the drug is not an antiviral or antiglaucoma agent and if the purpose of the drug is to diagnose problems of the human eye and adnexa.

We now will answer your questions explicitly. You first ask whether the Optometry Act authorizes an optometrist to use cocaine, and if so, to what extent. The statute does not authorize an optometrist, as distinguished from a therapeutic optometrist, to use any drugs. A therapeutic optometrist may, however, use certain topical ocular pharmaceutical agents, and the topical ocular pharmaceutical agents may include cocaine eye drops. Cocaine eye drops may not be an antiviral or antiglaucoma agent, and they must be administered for the purpose of diagnosing visual defects, abnormal conditions, and dis-

---

[14]See, e.g., Attorney General Opinions DM-98 (1992) at 3, H-56 (1973) at 3, M-187 (1968) at 3, O-2911 (1940) at 2.

[15]See State v. Jackson, 376 S.W.2d 341, 344-45 (Tex. 1964).

[16]Of course, the board may not promulgate a rule permitting a therapeutic optometrist to use cocaine eye drops, even for proper diagnostic purposes, if the eye drops are an antiviral or antiglaucoma agent.

[17]Health & Safety Code ch. 481. The Texas Controlled Substances Act lists cocaine as a schedule II drug. Id. § 481.033(1)(D).

[18]Id. § 481.071(a). A practitioner may administer a controlled substance only if a valid medical purpose exists for doing so and only in the course of medical practice. Id.

eases of the human eye or adnexa. Furthermore, a therapeutic optometrist may not administer cocaine eye drops unless the board has adopted a rule authorizing a therapeutic optometrist to use them.

Second, you ask whether the board may promulgate a valid rule allowing optometrists to possess and administer cocaine for diagnostic purposes. Again, an optometrist may not administer any drugs, and the board may not promulgate a rule authorizing an optometrist to do so. On the other hand, the board may promulgate a rule authorizing a therapeutic optometrist to possess and administer a topical ocular pharmaceutical agent if the pharmaceutical agent is not an antiviral or antiglaucoma agent and if the pharmaceutical agent is used for the purpose of diagnosing visual defects, abnormal conditions, and diseases of the human eye and adnexa. The board must, of course, comply with V.T.C.S. article 4552-2.14 and other applicable statutes in adopting its rule.[19]

## S U M M A R Y

The Texas Optometry Board may adopt a rule permitting a therapeutic optometrist to administer cocaine eye drops for diagnostic purposes, but only if the eye drops are not an antiviral or antiglaucoma agent and if the purpose of the eye drops is to diagnose visual defects, abnormal conditions, and diseases of the human eye and adnexa.

Yours very truly,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by Kymberly K. Oltrogge
Assistant Attorney General

---

[19]*See* Gov't Code ch. 551 (Open Meetings Act); *id.* ch. 2001, subch. B (Administrative Procedure Act).