# IN THE SUPREME COURT OF TEXAS

No. 19-1035

ANGELA DAVIS, AS PRESIDENT OF NEA-DALLAS (A LOCAL AFFILIATE OF TEXAS STATE TEACHERS ASSOCIATION), ON BEHALF OF ALL AFFECTED MEMBERS AND NAMED INDIVIDUALS, PETITIONERS,

v.

MIKE MORATH, COMMISSIONER OF EDUCATION OF THE STATE OF TEXAS, AND DALLAS INDEPENDENT SCHOOL DISTRICT, A PUBLIC BODY CORPORATE, RESPONDENTS

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRD DISTRICT OF TEXAS

**Argued March 23, 2021**

JUSTICE BLACKLOCK delivered the opinion of the Court.

A group of teachers (Teachers) at Dallas Independent School District objected to DISD's method of evaluating teacher performance. Pursuing a procedural pathway provided by the Education Code, the Teachers brought their grievances first to the school board, then to the Commissioner of Education, and finally to the courts. DISD denied the grievances as untimely. The Commissioner dismissed the grievances, concluding that their untimely presentation to the local school board deprived him of jurisdiction. The Teachers appealed to district court, which affirmed the Commissioner's decision. The court of appeals held that the Commissioner had jurisdiction over the grievances. It further held that some of the grievances were untimely and

must be dismissed but that others were timely and could proceed.  The Teachers, the school district, and the Commissioner all filed petitions for review.

We agree with the court of appeals that the Commissioner had jurisdiction to hear the Teachers' appeal.  We further hold that the grievances were timely filed with the school district.  We do not resolve the parties' disputes about the legality of DISD's teacher evaluation system.  We also affirm the court of appeals' disposition of the Teachers' contractual complaints regarding their compensation.  The decision of the court of appeals is affirmed in part and reversed in part, and the matter is remanded to the Commissioner.

## I.  Background

### A.  Factual Background

State law requires school districts to evaluate teachers using a procedure adopted by the Commissioner of Education or one developed by the district.  TEX. EDUC. CODE § 21.352.  Beginning in 2011, Dallas Independent School District developed its own evaluation procedure, called the "Teacher Excellence Initiative" (TEI).  The District's briefing makes clear that it considers TEI a great success.  The Teachers disagree.  Our decision today is purely procedural and takes no position on that question.

On May 22, 2014, the District's Board of Trustees voted to adopt TEI beginning with the 2014–15 school year.  The District asserts that all teachers were informed about the new system.  For example, the District published a "Guidebook" in May 2014, which it updated in March 2015.  The Guidebook explained TEI and informed teachers that their annual final evaluations for the 2014–15 year, called scorecards, would be sent in the fall of 2015.  Teachers were given a day and a half of training on TEI in August 2014.  The parties dispute whether any of these events and

2

documents adequately informed the teachers that, under TEI, they would not receive their scorecards until after the school year ended. Some teachers took the view that the timing of the scorecards violated section 21.352(c) of the Education Code, which they believe required the District to evaluate them before the school year ends.

The scorecards affected teacher pay. Each scorecard rated teachers based on three categories: classroom performance, student achievement, and student perception.[1] The student achievement component is based in part on students' standardized test scores, including the statewide STAAR test. According to the Commissioner, STAAR results were not available until after the school year ended, which meant the scorecards would not be prepared until then. The Teachers contend that standardized test scores were not necessarily unavailable during the school year in which they were administered. DISD asserts that some standardized test results "are inherently unavailable when the school year ends and only arrive for District processing over the summer." In September 2014, the District issued a regulation providing further details about the TEI process. The regulation again stated that the scorecards for the 2014–15 school year would be provided to teachers in the fall of 2015. On September 18, 2015, in conformity with the regulation and a published calendar, teachers received their scorecards for the 2014–15 school year.

---

[1] The parties agree that teacher compensation under TEI was based on each teacher's "Effectiveness Level" determined by the three categories rated in the scorecards. As discussed below, the Teachers also made a separate compensation-related complaint, in which they alleged that the District impermissibly decreased their total compensation by increasing their health insurance premiums. *See infra* at ___.

## B. Procedural Background

Some DISD teachers were unhappy with TEI and with their scorecards. Others were not. Under DISD's procedures, a grievance must be filed "no later than ten [business] days from the date the employee first knew or, with reasonable diligence, should have known of the decision or action giving rise to the grievance or complaint." The scorecards were distributed on September 18, 2015, and a grievance was filed ten business days later, on October 2.

The grievance was filed by Angela Davis, president of NEA-Dallas, a local affiliate of the Texas State Teachers Association, on behalf of all its affected members. The grievance document itself did not allege any complaints specific to a particular teacher, although Davis later submitted briefing alleging individualized complaints. The grievance alleged that the distribution of the scorecards on September 18, 2015 was the event "giving rise to the grievance" for timeliness purposes. It further complained that each scorecard violated state law by, among other things, failing to give teachers a final evaluation during the appraisal school year as allegedly required by section 21.352(c) of the Education Code. On October 14, 2015, Davis filed an amended grievance on behalf of all affected members and on behalf of 92 Teachers identified by name in an exhibit. The amended grievance added an allegation that the scorecards' effect on teacher pay was "a breach of each Grievant's contract of employment and/or demotion without due process of law."

Under District rules, the grievance was first considered by a grievance hearing officer. The officer denied the grievance but granted the Teachers' request that they "will not suffer any reprisal or retaliation for filing this grievance." The hearing officer otherwise denied the grievance as untimely under the District's ten-day rule. The officer's decision reasoned that the Teachers were aware of the TEI process from the time it was adopted in May 2014. The officer concluded that

4

because the Teachers failed to file their grievance within ten business days of the date they allege their evaluations were due under state law, their grievance was untimely. Alternatively, the officer concluded that the Teachers had not established that TEI violated the law. The Teachers appealed the hearing officer's decision to the DISD Board of Trustees. A subcommittee of the Board, acting on behalf of the full Board, affirmed the decision, agreeing with the hearing officer that the grievance was untimely.

The Teachers appealed the District's decision to the Commissioner of Education. *See* TEX. EDUC. CODE § 7.057(a).[2] The petition to the Commissioner alleged that "the entire TEI instrument and process as a whole is inequitable, arbitrary, capricious, subjective, and unlawful." Specifically, the Teachers alleged that by distributing the 2014–15 appraisals in the fall of 2015, TEI violated the version of section 21.352(c) of the Education Code then in effect, which required that "appraisal must be done at least once during the school year."[3] The Teachers contended that section 21.352(c) required appraisals to be provided "during the school year" to which the appraisal corresponds. The Teachers also complained of other alleged defects in TEI and in the scorecards. For example, they objected to the use of standardized test scores in the scorecard's

---

[2] Section 7.057(a) states:

APPEALS. (a) Except as provided by Subsection (e), a person may appeal in writing to the commissioner if the person is aggrieved by:
(1) the school laws of this state; or
(2) actions or decisions of any school district board of trustees that violate:
    (A) the school laws of this state; or
    (B) a provision of a written employment contract between the school district and a school district employee, if a violation causes or would cause monetary harm to the employee.

[3] Section 21.352(c) stated: "Except as otherwise provided by this subsection, appraisal must be done at least once during each school year." The provision was amended in 2019 to replace the word "during" with the word "for." Act of May 25, 2019, 86th Leg., R.S., ch. 943, § 2.007. References in this opinion to section 21.352(c) are to the pre-amendment version, which applies to this dispute.

student-achievement component, and they complained that the student-survey component is unfair and arbitrary. They further alleged that DISD had not adequately trained certain Teachers in TEI and had not complied with other self-imposed requirements. They claimed these failures concerning individual Teachers were "arbitrary, capricious, and unlawful, and constitute[] a violation of the school laws of this State and a breach of each Petitioner's employment contract with Respondent that has caused each Petitioner monetary harm." Separately, the Teachers complained of an increase in the monthly health insurance deductions taken from their pay checks. They claimed that the increased deductions amounted to an unlawful reduction in salary.[4] The petition sought a variety of relief, including a finding that "the TEI system violates the school laws of this state" and a declaration that each scorecard is void.

The matter was assigned to an administrative law judge at TEA, who issued a Proposal for Decision (PFD). The PFD recommended dismissal for lack of jurisdiction on grounds that the grievance was not timely filed with the school district. After receiving the PFD, the Commissioner dismissed the appeal and made findings of fact and conclusions of law. The Commissioner agreed with the PFD that the Teachers' grievance was not timely filed with the ISD and that he therefore lacked jurisdiction.[5] The Commissioner's Finding of Fact 5 states: "Petitioners' challenges to the components of the Teacher Excellence Initiative (TEI) program were not filed within ten business days of Petitioners learning of the components or of when Petitioners with reasonable diligence should have known of the components." Finding of Fact 6 states: "Individual Petitioners'

---

[4] This argument is addressed in Part II.D, *infra*.

[5] The decision was rendered by a "Designee" of the Commissioner. *See* 19 TEX. ADMIN. CODE § 157.1042(4). We refer to the Commissioner and his Designee collectively as the Commissioner.

challenges to their appraisals were not filed within ten business days of Petitioners learning of the potential errors in the process or of when Petitioners with reasonable diligence should have known of the potential errors." The parties agree that by "challenges to the components," the Commissioner meant facial challenges to the TEI procedure as a whole. By "challenges to the appraisals," the Commissioner meant complaints of individual teachers about their scorecards. This distinction drawn by the Commissioner's findings has framed much of the parties' characterization of the grievances throughout the appeal.

The Teachers appealed the Commissioner's decision to Travis County district court as authorized by statute. *See* TEX. EDUC. CODE § 7.057(d).[6] The district court affirmed the Commissioner's decision without a written opinion. The Teachers appealed, and the court of appeals affirmed in part and reversed in part. *Davis v. Morath*, 590 S.W.3d 80 (Tex. App.—Austin 2019). The court concluded that the Commissioner had jurisdiction to hear the appeal. *Id.* at 96. The court then addressed the timeliness of the "appraisal grievance" and the "components grievance."

The "appraisal grievance" refers to the Teachers' complaints about their scorecards. The court of appeals found this aspect of the grievance timely because it was filed within ten business days of when the Teachers received their scorecards. *Id.* at 102. As for the "components grievance," which the court of appeals also called the "TEI grievance," the court held that this aspect of the grievance was untimely. It described the "components grievance" as a "facial grievance as to the components of the TEI system itself." *Id.* at 103. It reasoned that TEI was

---

[6] "A person aggrieved by an action of the agency or decision of the commissioner may appeal to a district court in Travis County." TEX. EDUC. CODE § 7.057(d).

7

adopted months before the Teachers filed their grievance and that teacher training and publication of the TEI Guidebook also occurred months before the grievance. The "components grievance" was therefore untimely because it was filed more than ten days before the Teachers learned, or with reasonable diligence should have learned, of the new policy. *Id.* at 102–03.

One Justice concurred in part and dissented in part. She concluded that the "appraisal grievance" was also untimely and therefore would have affirmed the Commissioner's decision in full. *Id.* at 113 (Goodwin, J., concurring and dissenting).

## II. Analysis

### A. Jurisdiction

The Commissioner contends that the grievance was untimely under DISD's internal procedures and that, as a result, he lacked jurisdiction to hear the Teachers' appeal. The court of appeals disagreed and held that the Commissioner had jurisdiction whether or not the grievance was timely. *Davis*, 590 S.W.3d at 96. We agree with the court of appeals.

The Commissioner's jurisdiction to hear the Teachers' appeal of DISD's decision comes from section 7.057(a) of the Education Code, which provides:

> APPEALS. (a) Except as provided by Subsection (e), a person may appeal in writing to the commissioner if the person is aggrieved by:
> (1) the school laws of this state; or
> (2) actions or decisions of any school district board of trustees that violate:
> (A) the school laws of this state; or
> (B) a provision of a written contract between the school district and a school district employee, if a violation causes or would cause monetary harm to the employee.

Courts must review the Commissioner's evidentiary determinations under the substantial-evidence standard. *See* TEX. GOV'T CODE § 2001.174. However, the jurisdictional question presented here turns on the meaning of a statute and thus presents a question of law reviewed de

8

novo.  *Bush v. Lone Oak Club, LLC,* 601 S.W.3d 639, 647 (Tex. 2020).  "An agency's interpretation of a statute it enforces is entitled to serious consideration, so long as the construction is reasonable and does not conflict with the statute's language."  *Cadena Comercial USA Corp. v. Tex. Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 325 (Tex. 2017) (internal quotation marks omitted).  However, statutory ambiguity is a precondition to any such "serious consideration."  *Combs v. Health Care Servs. Corp.*, 401 S.W.3d 623, 630 (Tex. 2013) ("It is true that courts grant deference to an agency's reasonable interpretation of a statute, but a precondition to agency deference is ambiguity; an agency's opinion cannot change plain language.") (internal quotation marks omitted).

In construing statutory text, we look to the plain language of the text and interpret it in light of the statute as a whole.  *Silguero v. CSL Plasma, Inc.*, 579 S.W.3d 53, 59 (Tex. 2019).  "We must apply statutes as written and refrain from rewriting text that lawmakers chose."  *Pruski v. Garcia*, 594 S.W.3d 322, 325 (Tex. 2020) (internal quotation marks omitted).

The legislature's grant of appellate jurisdiction to the Commissioner is straightforward.  "[A] person may appeal in writing to the commissioner if the person is aggrieved by . . . actions or decisions of any school district board of trustees that violate . . . the school laws of this state" or that violate "a provision of a written contract between the school district and a school district employee."  TEX. EDUC. CODE § 7.057(a).  Here, the Teachers complain that their scorecards violated section 21.352(c) of the Education Code because the scorecards were not distributed during the school year for which they provided evaluations.  They also make various other complaints about the scorecards and about the TEI system.

No party disputes that the applicable provisions of the Education Code are "school laws of this state." *Id*. The grievance also complained that the effect of the scorecards was to reduce the Teachers' pay in violation of their contracts. Both the allegedly illegal scorecards and the alleged reduction in pay are the result of "actions or decisions of [the] school district board of trustees." *Id*. Neither the Commissioner nor DISD disputes the Teachers' claim that they were "aggrieved by" these actions or decisions. These complaints therefore fall squarely within the text of the legislature's grant of appellate jurisdiction to the Commissioner.

"State agencies are statutory creatures and have no inherent authority other than those powers the Legislature expressly confers." *Cadena*, 518 S.W.3d at 334. "When the Legislature acts with respect to a particular matter, the administrative agency may not so act with respect to the matter as to nullify the Legislature's action even though the matter be within the agency's general regulatory field." *State v. Jackson*, 376 S.W.2d 341, 344–45 (Tex. 1964). The text of section 7.057(a) dictates the scope of the Commissioner's jurisdiction, and the agency is not at liberty to add to or subtract from the jurisdiction assigned to it.

Assuming that the grievance was untimely under DISD rules, nothing in the statute conditions the Commissioner's jurisdiction on the timeliness or procedural validity of the complainant's actions at the district level. Instead, the legislature has mandated that a person "may appeal" if the person is "aggrieved by" an "action or decision" of the school board that violates the school laws or a written employment contract. TEX. EDUC. CODE § 7.057(a). In the Commissioner's view, however, such a person may *not* appeal if the person has not correctly followed the school district's internal grievance procedures. Nothing in the statute supports that result. The statute contains no procedural exceptions to its grant of appellate jurisdiction, and

10

neither the Commissioner nor the courts are at liberty to create one.  Under the plain language of section 7.057(a), procedural defects at the local level are not *jurisdictional* defects in the Commissioner's statutory authority to hear the appeal.[7]

### B. Timeliness of the Grievance

Having decided that the Commissioner had jurisdiction to hear the Teachers' appeal under section 7.057(a), we must next decide what effect the grievance's alleged untimeliness has on the Commissioner's review of the District's actions.

The Education Code authorizes school boards to adopt rules and procedures for hearing complaints from teachers and others.  TEX. EDUC. CODE § 11.1511(b)(13).  DISD's rules provide: "A grievance must be filed no later than ten [business] days from the date the employee first knew or, with reasonable diligence, should have known of the decision or action giving rise to the grievance or complaint."  No party disputes that this rule must be followed.  Nor do the parties dispute that the Commissioner may consider whether the appeal should be denied—not as a jurisdictional matter but on the merits—due to the complainant's failure to comply with the District's grievance procedures, including the ten-day deadline.  We find no basis in section 7.057 to doubt that the Commissioner should deny relief to a party whose appeal arises from a grievance that was not timely brought at the District level.  Although the Commissioner has *jurisdiction* over such an appeal so long as it meets the requirements of section 7.057(a), the proceeding is

---

[7] Of course, if a party attempted to "appeal" to the Commissioner without having obtained a decision from the school district at all, the Commissioner might argue that such a de novo proceeding is not within the Commissioner's *appellate* jurisdiction because there is no local decision that the party "may appeal."  We do not address this hypothetical situation.  Here, the Teachers sought and obtained a ruling from the District.  That the District's ruling rested on procedural grounds does not deprive the Commissioner of *jurisdiction* to hear the Teachers' appeal, as long as the appeal otherwise fits within the text of section 7.057(a).

nonetheless an "appeal." *Id.* § 7.057(a). The Education Code authorizes the Commissioner to *review* local school board decisions and actions, but it does not authorize him to reach the merits of a complainant's arguments regardless of how the complaint was handled at the school-district level. If the District was prohibited by its internal procedures from reaching the merits of the grievance, the scope of the Commissioner's appellate review is likewise limited.

We turn now to whether the Teachers' grievance was timely lodged with the District. The court of appeals analyzed the timeliness question by dividing the Teachers' claims into two broad categories, the "components grievance" and the "appraisal grievance." These categories appear to have originated in the Commissioner's findings. The Commissioner found: "Petitioners' challenges to the *components* of the Teacher Excellence Initiative (TEI) program were not filed within ten business days of Petitioners learning of the components or of when Petitioners with reasonable diligence should have known of the components." (Emphasis added). The court of appeals described this "components grievance" as a "facial grievance as to the components of the TEI system itself." *Davis*, 590 S.W.3d at 103. At the broadest level, the "components grievance" consists of the Teachers' allegation that the entirety of TEI "is inequitable, arbitrary, capricious, subjective, and unlawful." The court of appeals upheld the Commissioner's conclusion that the "components grievance" was untimely because publications by the District and teacher training made the TEI policy known or knowable more than ten days before the grievance was filed. *Id.*

The Commissioner also found: "Individual Petitioners' challenges to their *appraisals* were not filed within ten business days of Petitioners learning of the potential errors in the process or of when Petitioners with reasonable diligence should have known of the potential errors." The court of appeals described this part of the Commissioner's decision as dealing with the "appraisal

12

grievance." The court of appeals reversed this portion of the Commissioner's decision, holding that the "appraisal grievance" was timely filed because it was brought within ten business days of the Teachers' receipt of their appraisals. *Id.* at 102.[8]

To resolve this appeal, we must decide whether the Teachers failed to engage DISD's internal grievance process in a timely manner. The District argues that in considering this question we should defer to its interpretation of its own rules. It relies on section 11.151(b) of the Education Code, which vests in school boards "the exclusive power and duty to govern and oversee the management of the public schools of the district." TEX. EDUC. CODE § 11.151(b). This broad authority, however, does not preclude judicial review of school district actions alleged to violate "the school laws of this state." *Id*. § 7.057(a). As we have explained, section 11.151(b) dictates that "a school board must be the ultimate interpreter of its policy, *subject to* the limits established by the Legislature in its provisions for administrative and judicial review." *Montgomery Indep. Sch. Dist. v. Davis*, 34 S.W.3d 559, 565 (Tex. 2000) (emphasis added).

There are no disputed facts relevant to the timeliness analysis under the District's ten-day rule. The District's rule provides that a grievance must be filed "no later than ten days from the date the employee first knew or, with reasonable diligence, should have known of the decision or action giving rise to the grievance or complaint." Dallas ISD Board Policy DGBA (Local) (issued Apr. 29, 2015). Like section 7.057(a) governing the Commissioner's jurisdiction, the District's

---

[8] The exact contours of what the court of appeals included in the "appraisal grievance" are not entirely clear. The court did clarify, however, that the "appraisal grievance" included the complaint that the scorecards were not distributed until after the school year ended, in alleged violation of section 21.352(c) of the Education Code. 590 S.W.3d at 102. Whether the alleged violation of section 21.352(c) is properly treated as part of the "appraisal grievance" or the "components grievance," as the parties and the court of appeals describe those categories, is not an easy question to answer. Because these categories do not ultimately matter to our resolution of the timeliness question, we need not decide which aspects of the grievance belong in which category.

rule imposes a deadline running from the complained-of "decision or action." The Teachers contend that the relevant "decision or action giving rise to the grievance" is DISD's distribution of the scorecards. DISD and the Commissioner respond that the relevant "decision or action" is really the adoption of TEI in 2014 or other earlier decisions.

There is no doubt that the distribution of the scorecards was an "action" by the District. The controlling question is whether this action—or some other, earlier action or decision—"g[ave] rise to the [Teachers'] grievance." Of course, as a matter of timing, the distribution of scorecards immediately precipitated the filing of the grievance. In that sense, it "gave rise to" the grievance by causing it to happen. DISD and the Commissioner argue, however, that an action truly "giv[es] rise to the grievance" only if the grievance is genuinely a complaint about that action as opposed to a complaint about an earlier action or decision. We agree that the Teachers' grievance must genuinely complain about the scorecards themselves in order for the scorecards to be what "giv[es] rise to the grievance." The Teachers' grievance, however, is sufficiently connected to the distribution of the scorecards to satisfy this requirement.

The grievance makes many allegations regarding the scorecards. It claims they were sent too late in violation of section 21.352(c). It claims they violate portions of TEI with respect to certain teachers. And it claims the entire TEI evaluation system on which the scorecards are based is unlawful for various reasons. All of these are arguments for the invalidity or illegality *of the scorecards*. True, some of the Teachers' arguments—in addition to complaining of the receipt of illegal scorecards—also impugn earlier actions or decisions of the District, such as the decision to adopt the TEI system in the first place. But the fact that the scorecards' alleged illegality originated in an earlier policy decision by the District does not convert the Teachers' grievance from a

14

complaint about the scorecards' illegality into a complaint about the earlier policy decision. If the scorecards are legally flawed—a matter on which we express no opinion—then the District's action in sending them is subject to a grievance. It makes no difference that the *reason* the scorecards are legally flawed is the District's earlier decision to adopt TEI. The District's ten-day rule looks to the "action" alleged to be illegal and asks whether it "g[ave] rise to the grievance." It does not look to the *reasons why* the action is alleged to be illegal, and it does not authorize the District to strategically reframe the Teachers' arguments as a time-barred complaint about prior actions or decisions.

The law gives the DISD Board some authority to decide for itself what its rules mean. *See Montgomery*, 34 S.W.3d at 565 ("[U]nder the statutory scheme a school board must be the ultimate interpreter of its policy, subject to the limits established by the Legislature in its provisions for administrative and judicial review."). The law does not give the Board any authority to decide for itself which "action" the Teachers are challenging. Like any other plaintiff or administrative complainant, the Teachers are entitled to frame their own grievance. Their grievance, on its face, complains about the Teachers' scorecards, and we see nothing in the District's ten-day rule limiting the legal grounds or arguments on which such a complaint may rest.

The arguments made by the District and the Commissioner assume that each grievance must correspond to a particular "decision or action" for purposes of assessing its timeliness. They argue that because the "decision" to adopt TEI happened long ago, the Teachers' window to bring a grievance challenging it has irretrievably passed. They likewise argue that because the "decision" not to send scorecards until the following school year was known to the Teachers months before they filed their grievance, they forever missed their chance to complain about it.

15

The District's ten-day rule, however, is written in the disjunctive. It requires the filing of the grievance within ten days of the date the employee knew or should have known of the "decision *or* action" that gave rise to the complaint. The rule's disjunctive phasing indicates that compliance can be achieved through alternative means. *See City of Lorena v. BMTP Holdings, L.P.*, 409 S.W.3d 634, 642 (Tex. 2013) (holding that statute's use of the word "or" meant that it provided for alternative means of compliance). Even if the Teachers' grievance can be framed as a complaint about the District's past *decisions*, it can likewise be framed as a complaint about the *action* that necessarily followed those decisions—the distribution of scorecards as required by the TEI process. Because the grievance was lodged within ten days of that action, it was timely.

Yet another problem with the position taken by the District and the Commissioner is that it presumes complainants can bring grievances challenging any District decision with which they disagree, regardless of whether the decision has injured the complainants. Section 7.057 indicates the opposite. Only those "aggrieved by" the District's action or decision may appeal to the Commissioner. TEX. EDUC. CODE § 7.057(a). Thus, the Teachers could not initiate an administrative appeal challenging TEI without establishing that the TEI "aggrieved" them. The District says the Teachers should have filed a grievance about its decision to adopt TEI within ten days of that decision, but at that point it was not clear the Teachers were aggrieved. They had little reason to know—prior to receipt of their scorecards—whether the TEI system would aggrieve them. Many teachers were likely pleased with their scorecards, and most did not join the grievance. As the District points out, 5900 teachers received raises after they were evaluated under the new TEI system. It is far from obvious that teachers who eventually *benefited* from TEI were nevertheless "aggrieved by" its alleged illegality the moment the District adopted it.

16

In sum, nothing in the District's policies authorizes it to reframe the Teachers' grievance as a time-barred complaint about its prior decisions, so long as the grievance genuinely complains of an "action or decision" that occurred within ten business days preceding its filing. We conclude that the grievance's complaints about the scorecards clear that bar because, although they impugn the District's past decisions, they also genuinely arise from the District's action in sending the scorecards. We see nothing in the District's policy constraining the legal arguments available to a complainant seeking to demonstrate that DISD's action in sending the scorecards violated the law. Accordingly, we hold that all the Teachers' complaints relating to their scorecards were timely.[9]

## C. Preservation of Error Before the Commissioner

The Commissioner argues that the Teachers filed inadequate "exceptions" to the ALJ's proposal for decision and thereby failed to preserve error. The relevant administrative rule, promulgated by the Texas Education Agency, provides: "The exceptions shall be specifically and concisely stated. The evidence relied upon shall be stated with particularity, and any evidence or arguments relied upon shall be grouped under the exceptions to which they state." 19 TEX. ADMIN. CODE § 157.1059(e). The Commissioner found that the Teachers did not comply with this rule. The court of appeals reversed. The Commissioner argues in this Court that the Teachers'

---

[9] The Teachers and the Commissioner ask us to review the court of appeals' interpretation of section 21.352(c) of the Education Code, which provides that "appraisal must be done at least once during each school year." The court of appeals addressed the meaning of section 21.352(c) in the course of deciding whether the Teachers' arguments under that provision were an untimely "components grievance" or a timely "appraisal grievance." Because we do not adopt this distinction, we have no occasion to review the court of appeals' understanding of section 21.352(c). Moreover, the Commissioner—whose decision we are reviewing pursuant to section 7.057(d)—did not address the meaning of section 21.352(c) because he concluded he lacked jurisdiction to do so. We agree with the District's argument that an appropriate course is to remand the dispute over section 21.352(c)'s meaning for an initial determination by the Commissioner. The Commissioner should consider the question anew, without regard to the discussion of it in the court of appeals' opinion.

17

exceptions were too vague to meet the rule's specificity requirement. We agree with the court of appeals.

An agency must follow "the clear, unambiguous language of its own regulations." *TGS–NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 438 (Tex. 2011). Whatever the effect of non-compliance with section 157.1059(e) may be, the Teachers argue their exceptions to the PFD complied with it. We agree. The Teachers made sufficient objections to the PFD to preserve their complaints regarding the scorecards. They filed 32 exceptions set out in 133 paragraphs. The exceptions included arguments that reasonably match the contentions carried forward in this appeal, including the arguments we ultimately find dispositive. The exceptions contend that the date the Teachers received their scorecards is the relevant date for determining compliance with the ten-day deadline: "All of NEA Dallas's arguments made in the grievance process pertained to the class members' Scorecards, and the manner in which each teacher was appraised, [and therefore] were timely filed on October 2, 2015, within ten days of the teachers' receipt of the Scorecards on September 18, 2015." The exceptions further argue that "[t]he claims made in NEA Dallas's grievance were not ripe until the Scorecards were issued in the fall of 2015."

These exceptions put the agency on sufficient notice that the Teachers intended to advance the arguments upon which we rely today. In promulgating its rule requiring specific exceptions, TEA itself stated that the purpose of requiring exceptions is simply "to ensure full presentation of all disagreements with the proposal for decision." 29 Tex. Reg. 6887, 6888 (2004) (General Provisions for Hearing Before the Commissioner of Education). The exceptions did not have to fully elaborate the Teachers' argument. They adequately captured the essence of the timeliness

18

argument the Teachers later advanced in more detail in the courts. This was sufficient to preserve error in this context.[10]

### D. Dismissal of Claim for Reduction in Compensation

The Teachers' petition to the Commissioner alleged that the law prohibits DISD from reducing a teacher's salary after the last date the teacher can exercise his right to unilaterally resign from his contract. The Teachers claimed DISD violated this rule by increasing the health-insurance deductions taken from teacher pay checks, which allegedly reduced the Teachers' salaries by reducing their take-home pay. The Teachers alleged that this amounted to a breach of their contracts.

The Commissioner rejected this claim on the merits. He acknowledged TEA administrative decisions holding that a school district cannot reduce a certified teacher's total compensation after the period when the teacher can unilaterally resign. *See Bledsoe v. Huntington Indep. Sch. Dist.*, Docket No. 033-R10-1103, at 8 (Comm'r Educ. 2014) (discussing TEX. EDUC. CODE §§ 21.105, 21.160, 21.210). But this rule, the Commissioner reasoned, applies to a reduction in total compensation, not to a reduction in take-home pay resulting from a higher health insurance premium. Further, the Commissioner observed that the Teachers had not made their employment contracts part of the record, so there was no proof that any Teacher's total compensation had been

---

[10] The District argues more particularly that certain Teachers' complaints about their individual scorecards were not properly preserved through exceptions to the ALJ's PFD. We do not understand the Commissioner's written Decision to reach the merits of any of these complaints, however. The Commissioner's erroneous conclusion that he lacked jurisdiction because of the grievance's untimeliness resulted in a truncated proceeding in which the complaints DISD claims have not been preserved for appeal were never decided in the first place. In other words, DISD complains the Teachers did not adequately preserve their position *on the merits* of some of their complaints about the scorecards, but there was no ruling on the merits of these complaints and therefore no error to preserve. We conclude that the Teachers preserved error with respect to the timeliness issue, which provides an adequate basis for the limited decision we reach today.

reduced. He also found that the claim must fail because the Teachers did not raise it before the school board. The court of appeals affirmed this portion of the Commissioner's decision. *Davis*, 590 S.W.3d at 103–04. The court reasoned that the claim was properly dismissed "because it was not raised at the local level" and because "even if it had been preserved, the reason for the increased insurance cost is unclear from the record." *Id.*

We agree with the court of appeals. The Teachers fail to demonstrate that their complaint regarding reduced take-home pay due to rising insurance premiums was raised at the District level or supported by the record. Further, the Teachers do not persuasively rebut the Commissioner's conclusion that reductions in take-home pay due to rising insurance costs—as opposed to reductions in total compensation—do not trigger the salary protections the Teachers invoke.

### III. Conclusion and Disposition

We affirm the judgment of the court of appeals with respect to the Commissioner's jurisdiction to hear the appeal of the Teachers' grievance. We further hold that the Teachers' grievance regarding their scorecards was timely filed in accordance with DISD's internal ten-day rule. As a result, the portion of the court of appeals' judgment upholding the dismissal of parts of the grievance as untimely is reversed. The portion of the court of appeals' judgment reversing the dismissal of part of the grievance is affirmed. The portion of the court of appeals' opinion construing TEX. EDUC. CODE § 21.352(c) is vacated. Finally, we affirm the court of appeals' judgment regarding the Teachers' claims of unlawful salary reduction due to increased insurance costs. The case is remanded to the Commissioner for further proceedings consistent with this opinion.

_____
James D. Blacklock
Justice

**OPINION DELIVERED:** May 28, 2021